MARY L. SIMPSON and others *vs.* JOHN B. COOK and others.

October 9, 1877.

**Alienation of Real Estate—Valid Suspension of the Power.**—The absolute power of alienation of real estate may be suspended during the minority of a minor, indicated in the instrument creating the suspension, and, in such case, the suspension will cease with the death of the minor before coming to majority.

**Same—Same—Instrument of Suspension Construed.**—A testator, who died leaving five minor children, devised his real estate in trust to collect the rents and profits, and apply them to the support of his widow, and the support and education of his children, with power in the trustee to sell a designated part, the will containing these clauses : "It is my desire that no division of the balance of my real estate shall be made amongst my children until the youngest child shall become of lawful age. * * * When my youngest child shall become of lawful age, all the rest and residue of my real estate and personal property, wheresoever situated, shall be equally divided between my said wife and our children, share and share alike," etc. *Held,* that by the words "youngest child," is meant not the youngest child which shall live to majority, but the youngest child living when the will took effect at the death of the testator ; that the suspension of the power of alienation depended on the minority of such child, and would terminate on such child coming of age, or at his death before coming of age, and that such suspension is valid.

**Executor—Trustee—When Trust does not Vest in Co-Executor.**—The will nominated O. as executor, and then provided for certain trusts to be executed by "said executor," without any words to show an intention that the trust should vest in any other person who might be appointed executor. *Held*, that the trust vested in O., and not in the office of executor, and that a codicil added to the will in these words, "I hereby nominate and appoint John B. Cook, of the city of St. Paul, as a co-executor of said will, and desire that the said Harvey Officer and John B. Cook may be appointed as executors of the said last will and testament," does not make Cook a co-trustee with Officer in the trusts created by the will.

**Probate Court—When Decree cannot be Questioned Collaterally.**—A decree of the probate court having jurisdiction of the estate, discharging an executor, cannot be questioned collaterally, even though the decree state a reason for the discharge, which is not, under the statute, cause for discharge.

Appeal by plaintiffs from the judgment of the district court of Ramsey county, upon an action tried before *Simons*, J., without a jury.

*S. L. Pierce*, for appellants.

*Bigelow, Flandrau & Clark*, and *Geo. L. & Chas. E. Otis* and *T. R. Huddleston*, for respondents.

GILFILLAN, C. J. This is an action to set aside a conveyance of real estate made by the defendant Officer to the defendant Cook, and a mortgage made by Cook to the defendant Griggs; to have the provisions of a will construed, so far as they relate to real estate; and the title to the real estate adjudged to be in the plaintiffs other than Mary L., subject to her dower, and in the defendant Emma Kelsey.

The plaintiff Mary L. is the widow, and the other plaintiffs and the said Emma Kelsey are the children of James W. Simpson, deceased. The latter died in May, 1870, seized of certain real estate, among it part of block 16, in the town of St. Paul, and leaving a will, the construction of which is sought in this action. The will, as originally drawn, nominated the defendant Officer as executor. It expressed a desire that the widow and children should continue to occupy the then homestead, situated on part of block 16, until a permanent homestead should be purchased as therein provided. The

fifth clause provided that "whenever my said executor shall deem it best for the interests of my estate, he may sell the whole or any part of the real estate belonging to me in block 16;" and directed him out of the proceeds thereof, or with other funds of the estate, if he saw proper, to purchase a house and lot for a permanent homestead for the widow and children, until the youngest child should become of age; at which time the executor was directed to convey it in fee simple to the widow, if living, and if not living then to divide it among the children as in the will afterwards provided. The executor was directed to make such purchase as expressed in the will, "in the name of my estate;" and the executor was also authorized, in his discretion, to make advances to any one or more of the children, as they came of age, of such sums as he might think could be spared from the net earnings and profits, or from the proceeds of the real estate authorized to be sold, and without prejudice to the maintenance of the widow and minor children. The executor was also directed to pay monthly or quarterly to the widow such sums as might, in his judgment, be necessary for the support and maintenance of the widow, and the support, maintenance and education of such of the children as might live with the widow at the homestead during their minority, or until the marriage of the daughters, and to pay for the education and maintenance of such children as should be at school with the consent and approbation of the widow and executor. With respect to the estate other than that which the executor might sell in block 16, the will provides as follows: "It is my desire that no division of the balance of my real estate shall be made amongst my children until the youngest child shall become of lawful age." * * * "When my youngest child shall become of lawful age, all the rest and residue of my real estate and personal property, wheresoever situate, shall be equally divided between my said wife and our children, share and share alike—the share of each child being subject to any advancements made to them by my executor as afore-

said." * * * "If my said wife shall be deceased at the time of said final division, as above provided, then her share of said estate shall be equally divided amongst my said children, share and share alike."

The testator afterwards added a codicil to the will, in these words: "I hereby nominate and appoint John B. Cook, of the city of St. Paul, as a co-executor of said will, and desire that the said Harvey Officer and John B. Cook may be appointed as executors of the said last will and' testament." At the time of the testator's death five of his children were minors. The will was proved and allowed by the probate court of Ramsey county, and the two executors named, qualified, and letters testamentary issued to them. October 12, 1870, the probate court made an order discharging Cook as executor, which recites that it is made upon his resignation, and after a faithful discharge of his duties as executor. In April, 1871, Officer, as sole executor, conveyed to Cook a part of the real estate in block sixteen, upon a sale made in good faith, for full value, and in all respects just and fair, and for the best interests of the estate.

The plaintiffs claim that this will is void as to the real estate, because it suspends the power of alienation for a period longer than that allowed by statute. The statute, sections 14 and 15, c. 45, Gen. St., reads: "Section 14. Every future estate is void in its creation, which suspends the absolute power of alienation for a longer period than is prescribed in this chapter. Such power of alienation is suspended where there are no persons in being by whom an absolute fee in possession can be conveyed." "Section 15. The absolute power of alienation shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of two lives in being at the creation of the estate, except in the single case mentioned in the next section." The case mentioned in section 16 is that of a contingent remainder in fee limited on a prior remainder in fee, and the exception has no application to this case.

This will suspends the power of alienation, except as to block 16, during the continuance of the estate vested in the trustee; for the trustee, except as to the real estate in that block, cannot convey, and the widow and children have no estate in possession which they can pass by deed. It is suggested that the trustee and the widow and children—the minor children by their guardian—may join and so convey the entire estate. But the joint deed would not have, either as against the trustee or against the widow and children, any effect which their separate deeds would not have. *Coster* v. *Lorillard*, 14 Wend. 265.

Is the suspension for a longer period than is allowed by the statute? The common law rule applicable to executory devises was that the contingencies ought to be such as may happen within a reasonable time; as, within one or more life or lives in being, or within a moderate term of years. The utmost length that has been hitherto allowed for the contingency of an executory devise of either kind to happen in, is that of a life or lives in being, and one and twenty years afterwards. 2 Bl. Com. 173. In this respect the statute has abolished the distinction existing at common law between the different kinds of future estates, and, except in the case mentioned in section 16, applies to all the common law rule applicable to executory devises; reducing, however, the number of lives to two, and cutting off any additional suspense. Its provisions were taken from the statutes of New York. Those statutes have received from the courts of that state very thorough examination and decision. This result has been arrived at—and, indeed, no other was possible, within the terms of the statute—that there can be no valid suspension of the power of alienation except where the period during which it may continue is defined with reference to the continuance of not more than two lives in being at the time when the suspension commences. It follows from this that there can be no suspension for a fixed time; for such term, however short, may extend beyond the continuance of lives. It may be made

to depend upon an event other than the extinction of life, provided it be such that it must happen within the indicated lives. The suspension must cease at or before the extinction of such lives. It may be created to continue during a minority, for the minority must cease with the death of the minor. In such case the suspension cannot extend beyond the life of the minor, and it may be terminated by his coming to majority within the life. An estate, to continue during the the minority, is not an absolute term of years corresponding with the possible duration of the minority, but is determined by the death of the minor before he attains his age. *Lang v. Ropke*, 5 Sandf. 363. A limitation, then, on two minorities, is not for a longer period, and it may turn out to be for a shorter period than a limitation on the two lives. Three minorities, however, may extend beyond any two of the lives which might be designated; and the suspension cannot be created to continue during more than two minorities, where minorities instead of lives are selected to measure the period of suspension. *Hawley* v. *James*, 5 Paige, 318; 16 Wend. 61; *Thompson* v. *Clendening*, 1 Sandf. Ch. 387; *Boynton* v. *Hoyt*, 1 Denio, 53; *Jennings* v. *Jennings*, 7 N. Y. 547; *Thomas' Estate*, 1 Tucker, (N. Y.) 367; *Lang* v. *Ropke, ante.* The two lives during which the suspension may continue, and it is the same where minorities are selected, must be either expressly mentioned or so indicated that they can be known. Mr. Justice Bronson, in *Hawley* v. *James*, said: "The lives must be designated either by naming two persons in particular, or limiting the estate on the two first lives which shall fall in a class of several individuals."

In this case there were, at the testator's death, five minor children, and if the will, properly construed, provides for the suspension to continue during all of the minorities, so that it would not cease until all the minors became of age or died, it would certainly be for a period longer than that allowed by the statute. The expression in the will is, "until the youngest child shall become of lawful age," which is equivalent to the

expression, "until the minority of the youngest child shall cease." On the part of the plaintiffs it is assumed that this means the youngest child who shall live and become of lawful age; and, if that be the true meaning, it makes the suspension depend on five minorities. *Hawley* v. *James, ante; Thomas' Estate, ante.*

On the part of the defendants it is claimed that it means the youngest child living at the death of the testator; and, if that be so, the suspension is to cease with the coming of age, or death, if it happen sooner, of that one child, and it depends on only one minority. The validity of the limitation, then, depends upon which of these two meanings shall be attributed to the expression which we have cited. The most natural meaning to give to it is, that the testator referred to one child who might be known at the time the will took effect; that is, the one who should answer the description, "youngest child," at that date. A general rule for the construction of contracts, and it is peculiarly applicable to wills, is that the construction shall be favorable, so that the agreement may, if possible, be supported; and if the words be susceptible of two senses— one agreeable to, the other against law—the former sense shall be adopted. 1 Chitty on Con. (11th Am. Ed.) 111, 112; *Du Bois* v. *Ray,* 35 N. Y. 162; *Butler* v. *Butler,* 3 Barb. Ch. 304; *Burke* v. *Valentine,* 52 Barb. 412, 425. In the last two cases the same form of words as those we are considering occurred in wills; and the validity of the limitations depended on whether, in the one case, by "youngest child," and in the other, "eldest child," the testator meant the youngest or eldest child living at the time the will went into effect, or the youngest or eldest who should live to majority; and to sustain the will, the court, in each case, held to the first of these meanings. Such, we think, was the meaning of this will. There was, therefore, no illegal suspension of the power of alienation.

The sale of part of block 16, by Officer to Cook, is claimed to be invalid, because they were, as claimed, co-trustees

and co-grantees of the power of sale. Had they stood in that relation there would be no question that the sale was invalid. Under this will, however, the trust and power of sale were vested in Officer alone. The office of executor and that of trustee of such a trust, and grantee of such a power, are entirely distinct. A person may be one and not the other; he may, if named for both, accept one and not the other; two persons may be executors, and only one of them trustee and grantee; or two may be trustees and grantees, and only one of them executor. When a power or trust beyond that requisite to the duties of executor is granted to an executor, *eo nomine*, he may accept and execute the trust or power without accepting and qualifying as executor, unless the will expressly annex the trust or power to the office of executor. *Judson* v. *Gibbons*, 5 Wend. 224; *Conklin* v. *Edgerton's Adm'rs*, 21 Wend. 430; *Williams* v. *Conrad*, 30 Barb. 524. So that, where a trust or power is given to the executor, *eo nomine*, he does not take by virtue of his office as executor, but because he is the person intended by that designation. The word "executor" is *descriptio personæ*, and the trust or power does not vest in the office, but in the person who is described by the word "executor." In this will, preceding the clauses creating the trust and power, Harvey Officer is named as executor. The clauses creating the trust and power designated the trustee and grantee as "my said executor," and provide what "he" or "my said executor" may or shall do in respect to them. It is as clear that Harvey Officer was intended as the trustee and grantee of the power, as it would have been had his name been used instead of the words "my said executor." Of course it was competent for the testator to add another trustee or grantee either by a subsequent clause in the body of the will, or by a codicil; but the addition, either by a subsequent clause or codicil, of another as co-executor, without referring, in any manner, to the trust and power vested by the preceding part of the will in the person first named as executor, does not show an intention to add another trustee or grantee of the power.

In this view of the case, inasmuch as the sale to Cook was for full value, was in all respects just and fair, and for the best interests of the estate, it is hardly material that Cook was or was not properly discharged from his executorship. But, as to that point, we will say that, as the probate court has jurisdiction to remove or discharge an executor, its decree for that purpose cannot be questioned collaterally. If it be based upon reasons not made by the statute cause of removal or discharge, it is error, and the error can be corrected by appeal. That the decree recites an erroneous ground, does not vitiate it in collateral proceedings. It has never been suggested that the record of a court of competent jurisdiction was void on account of mere error appearing by the record.

Judgment affirmed.