SOFFI RONG v. AXEL HALLER.[1]

December 3, 1909.

Nos. 16,179—(14).

**Will — Intention of Testator.**

In construing a will, the intention of the testator, expressed therein, must prevail, if consistent with law. If its language be reasonably susceptible of two constructions, one of which would invalidate the will, and the other sustain it, the latter must be adopted.

**Validity of Will.**

An action or proceeding involving the validity of a will must be determined from the same viewpoint as if it had been brought at the time of the death of the testator; for its validity depends, not on what has happened since the testator's death, but on what might have happened.

**Suspension of Power of Alienation.**

A devise of land which suspends the absolute power of alienation for a fixed period, however short, without reference to lives in being, is void; for no suspension of the power of alienation is valid, unless it must in every contingency terminate within the period of two specified lives.

**Invalidity of Trust.**

Where a legal and illegal trust are created by will, and so connected as to constitute one general scheme, so that it must fail if the one be retained and the other rejected, the legal trust must fall with the illegal one.

**Will Held Void.**

The will set out in the opinion construed, and *held* void, because it illegally attempted to suspend the power of alienation of the testator's land.

From the final decree of distribution of the estate of Severt K. Rong, deceased, entered in the probate court for Goodhue county, the judge of probate for Dakota county acting for the judge of probate for Goodhue county, an appeal was taken to the district court for the last named county where Crosby, J., made an order affirming the decree of the probate court assigning the residue of the estate to the Hauges Norwegian Evangelical Lutheran Synod of America, a

[1]Reported in 123 N. W. 471.

corporation, subject to the trust reposed in Prof. M. G. Hanson. From an order denying the motion of Soffi Rong, an heir of the deceased, for a new trial, she appealed. Reversed and remanded for further proceedings in accordance with the opinion.

*Lind, Ueland & Jerome,* for respondent.

The common-law rule against perpetuities was to prevent postponing the vesting of the absolute right to take and use property, whether real or personal, beyond a fixed future period. The vesting of the property could not be put beyond the life or lives of persons in being and twenty one years thereafter. In the course of time, the courts paid no attention to whether the persons who were to have the property after the expiration of the lives were infants, but permitted the twenty one years to be taken in gross, independent of lives, so that the postponement of the vesting of the estate might be for a fixed time, if that time did not exceed twenty one years. 1 Tiffany, Modern Law Real Prop. § 154; Gray, Perpetuities, §§ 223, 224, 225; Marsden, Perpetuities, 24, 25, 193; Barnitz's Lessee v. Casey, 7 Cranch, 456; Toms v. Williams, 41 Mich. 552, 571; Rolfe v. LeFebre, 69 N. H. 238, 242; Palmer v. Holford, 4 Russell, 403.

The court will note that the rule against perpetuities dealt and deals wholly with the subject as to the time within which a future estate must vest while the act of 1907 deals with the subject as to how long a trust under it may endure. As the trust to Hanson vests at once, the bequest to him, being only subject to debts and funeral expenses, cannot be attacked as to the time of its commencement, but only if by its terms it is to continue longer than the statute permits. The act says it shall not endure for a period longer than the life or lives of specified persons in being and "twenty one years after the death of the survivor of such persons." The act certainly does not require the trust to be predicated in express terms upon specified lives. The legislative intent must therefore be that the trust may exist for twenty one years independent of lives. This must be the legislative intent, not only because it is the formula of the rule against perpetuities which has been edited into the statute to define the limitation of time, but because (assuming the trust need not be predicated

on lives in express terms) the trust would otherwise have to cease immediately upon its creation.

If not an authorized trust the directions for Hanson to convey the property to the Synod fall by the express provisions of our statutes, under R. L. 1905, § 3252, as a power in trust. Randall v. Constans, 33 Minn. 329; Carson v. Cochran, 52 Minn. 67; Manice v. Manice, 43 N. Y. 303, 364. This court has sometimes not considered the difference of sufficient importance to mention it, and properly so, the only difference being that in one case the legal title, technically speaking, is in the trustee and in the other in the heir. If Hanson took merely a power in trust the inquiry is still open as to whether there is a violation of our statutes forbidding the suspension of the power of alienation or the rule against perpetuities, for we concede that the statute or rule can no more be avoided by a power than by a trust.

The construction given in Atwater v. Russell (will case), 49 Minn. 22, 29, 52, and Atwater v. Russell (deed case), 49 Minn. 57, 78, namely, that in a given case the test is not whether the power may be exercised, but whether it can be exercised within the prescribed period. In both these cases there was a power in trust (not an authorized express trust) to convey land to a party for a charitable purpose, not later than ten years after the donor's death, and the court held it was not contrary to the statute, because the donee could convey at any time. There is nothing in the will in conflict with the statute so construed. The language "within five years after the settlement of my estate" is used to designate the time beyond which the conveyance to the Synod must not be made.

In ascertaining how long the vesting is postponed, no time at all connected with the administration of the estate should be counted, for the rule against perpetuities is a practical rule, aimed at the creation of future estates, and not at delays incident to preliminary acts. Gray, Perpetuities, §§ 203, 230. This is the reason why a bequest to trustees for the benefit of a corporation to be organized is good. Technically speaking the power of alienation is suspended and the time for vesting the estate is postponed from the time of the

109 M.—13

testator's death until the corporation is organized, but it is a suspension and a delay which are not within the spirit of the statute or the rule. See Watkins v. Bigelow, 93 Minn. 210; People v. Simonson, 126 N. Y. 299; Russell v. Allen, 107 U. S. 163; Kahle v. Evangelical Lutheran Joint Synod, 81 Minn. 7; Lane v. Eaton, 69 Minn. 141; Brandenburg v. Thorndike, 139 Mass. 102; Belfield v. Booth, 63 Conn. 299.

*A. J. Rockne, John A. Dalzell* and *W. A. McDowell,* for appellant, (in reply).

At the time of the testator's death this could have happened and necessarily must be taken into account when the court is to determine whether the deceased made a valid disposition of his property. First an indefinite period, not measured by lives, for the settlement of the estate. Then five years for the Synod to determine whether it would take the property charged with the trust or use; then five years for Hanson to determine whether he will take it for the purpose named; and then an indefinite period for some citizen of Goodhue county to petition the district court to appoint some one to take the property. These are the plain and undisputed provisions of this will. This is the channel through which the testator designed that the title to his property must or should pass before it finally found a definite and final resting place. Of course, if the court is to substitute or eliminate, it is an easy matter to make any void bequest valid, but we submit the court has no such power. It must take wills and instruments as it finds them, apply the law, and, if found void, so declare. In re Walkerly Estate, 108 Cal. 627; In re Fair Estate, 132 Cal. 523; Bask v. Bask, 9 Pa. St. 260; In re Wilcox, 194 N. Y. 288; Trinity v. Baker, 91 Md. 539.

One of two methods must be resorted to before the Synod gets title to this property. It must either get it through Hanson, or it must get it in some way by direct devise from the testator. Which? If through Hanson, this cannot be done by the method laid out in the will. This method violates the rule relating to perpetuities and is void. By a direct devise? The testator in his will says that he wants to be sure that his property will be used for a certain purpose,

hence he asks the Synod to promise that they will so do, that is, by resolution say that they will accept it with the use imposed. The testator says in plain terms: "If the Synod will not do as I ask them to do, then I want Hanson, if he will, to take charge of my property, and I desire him to have five years within which to prepare or to make up his mind whether he will or not." The testator in plain terms says that if neither the Synod nor Hanson will assume the responsibility imposed upon the property, then he directs the district court to appoint someone to do so. The court in answer to this must say: "There is nothing to it, it is all void and meaningless as the property was all disposed of by the testator in the first instance to the Synod."

Counsel argue that the rule against perpetuities deals wholly with the time within which a future estate must vest. This is the common-law rule laid down by Gray on Perpetuities. The statutory rule, however, is entirely different and Gray, in his work on Perpetuities in several places comments on the difference between the meaning of the term "perpetuity," (See index title, Perpetuity), as the term is used at the common law and in the statute based on the New York statutes relating to perpetuities.

We have in Minnesota no statute requiring an executor or other interested party to petition the probate court for the probate of a will. Massachusetts and Connecticut both have statutes compelling and requiring executors to petition for the probate of wills within thirty days, etc., thereby starting in motion the machinery of the probate court, and the most that can be said for the decisions from those states cited by respondent is, that when the courts have matters properly before them they will act with reasonable diligence and will not unreasonably delay the settlement of estates. Doubtless a different conclusion would have been reached in the absence of such a statute, as is the case in Minnesota.

START, C. J.

Severt K. Rong, for thirty years next before his death was a resident of the county of Goodhue, this state, and owned and farmed land therein. He never married. On October 22, 1904, he made his

last will, the here material provisions of which are in the words following:

I give, devise, and bequeath all of my estate both real and personal to Prof. M. G. Hanson to be held by him nevertheless in trust and for the purpose following, viz.: Said trustee shall convey, deliver and transfer the same and all increase issue and profit derived from said property and estate, less a reasonable compensation for his expenses and work performed in carrying out this trust, to the Hauges Norwegian Evangelical Lutheran Synod of America (a corporation), provided that said Hauges Norwegian Evangelical Lutheran Synod of America shall within five years after the settlement of my estate accept such conveyance and transfer by a resolution duly adopted by it; and in that event said Synod shall have and hold said property and estate forever and in trust for the purpose of erecting and maintaining thereon an orphans' home under such rules and regulations as said Synod may from time to time prescribe. ·

"But in the event said Synod shall fail to so accept such gift and conveyance within the five years aforesaid, then my said trustee, Prof. M. G. Hanson, shall use and hold such property and estate for the purpose of erecting and maintaining and shall erect and maintain upon said premises and real estate an orphans' home as aforesaid, and, in the event of his failure or neglect so to erect and maintain such orphans' home within the five years next succeeding the said five years allowed for the Synod to accept such gift or in the event of his death, the district court of Goodhue county, Minnesota, shall upon the application of any resident voter therein select and appoint some suitable person as trustee therefor and such trustee and his successors thereafter shall take possession of such property and use said property for the same purpose as hereinbefore prescribed. In the event that said Prof. M. G. Hanson as such trustee or any person appointed by said district court takes possession of my estate and property for the uses and purposes as hereinbefore prescribed said orphans' home shall be maintained and conducted under such rules and regulations as said trustee shall prescribe." I make and appoint Axel Haller to be executor of this, my will.

The testator died March 4, 1905, leaving no widow, issue, father,

mother, brother, or sister.   His heirs at law are uncles and aunts, of whom Soffi Rong, the appellant herein, is one.   The Hauges Norwegian Evangelical Lutheran Synod of America, named in the will, and herein referred to as the Synod, is a religious corporation organized under the laws of this state (Laws 1885, p. 194, c. 151), which authorizes such corporation to take by devise or bequest real and personal property, and hold the same for religious, charitable, or educational purposes.   The Synod adopted, on June 7, 1906, a resolution purporting to be an acceptance of the provisions of the will as to it.

The probate court of the county of Goodhue duly admitted the will to probate, and appointed the respondent herein, Axel Haller, as executor, who accepted the appointment and duly qualified.   The residue of the estate, after the payment of debts and expenses of administration, was two hundred fifty-eight acres of land in the county of Goodhue, of the value of $15,480, and personal property of the value of $10,821.23, and, on October 2, 1907, the probate court made its final decree of distribution of such residue, which was, so far as here material, to the effect following:   It is adjudged that such residue be, and the same is hereby, assigned to and vested in the Synod, sole devisee and legatee of the testator, to have and hold the same, forever, for the purpose of erecting and maintaining an orphans' home as provided by the will, subject to the execution of the trust created and reposed in Prof. M. G. Hanson by the will, who is hereby authorized to carry out such trust, and the executor is hereby ordered to deliver the residue of the estate to him as such trustee.

The appellant appealed from this decree to the district court of the county of Goodhue, which affirmed the decree.   The appeal to this court is from an order of the district court denying the appellant's motion for a new trial.

The contention of the appellant, reduced to its lowest terms, is that the will is void because it attempted to create a trust which is invalid, and also attempted illegally to suspend the power of alienation.   It will be helpful, before construing this will, to state the law applicable to the construction of wills, the creation of trusts, and the suspension of the power of alienation of land.

In construing a will, the intention of the testator, expressed therein, must prevail, if it be consistent with law. If the language of the will be reasonably susceptible of two constructions, one of which would invalidate the will and the other sustain it, the latter construction must be adopted. Simpson v. Cook, 24 Minn. 180; In re Swenson's Estate, 55 Minn. 300, 56 N. W. 1115; Yates v. Shern, 84 Minn. 161, 86 N. W. 1004.

An action or proceeding involving the validity of a will must be determined from the same viewpoint as if it had been brought at the time of the death of the testator; for its validity depends, not on what has happened since the testator's death, but on what might have happened. In re Wilcox, 194 N. Y. 288, 87 N. E. 497; Gray, Perpetuities, § 231.

There can be no valid suspension of the power of alienation of land, except where the period during which it may continue is defined with reference to the continuance of not more than two specified lives in being at the time the suspension commences, or, in other words, a devise of land, which suspends the absolute power of alienation for a fixed period, however short, without reference to lives in being, is void; for no suspension of the power of alienation is valid, unless it must in every contingency terminate within the period of two lives. G. S. 1894, § 4376; R. L. 1905, § 3204; Simpson v. Cook, supra; Greenwood v. Murray, 26 Minn. 259, 2 N. W. 945; Herzog v. Title Guarantee & Trust Co., 177 N. Y. 86, 99, 69 N. E. 283, 67 L. R. A. 146. In the second case cited land was devised in trust to sell the same five years after the death of the testatrix and pay the proceeds to the persons named in the will. The devise was held void, because it illegally attempted to suspend the power of alienation. Where a legal and an illegal trust are created by will, and so connected as to constitute one general scheme, so that the scheme must fail if the one be retained and the other rejected, the legal trust must fall with the illegal one. 28 Am. & Eng. Enc. (2d Ed.) 866; Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. 487; In re Johnston's Estate, 185 Pa. St. 185, 39 Atl. 879, 64 Am. St. 621. The obvious reason for the rule is that the retention of the legal trust in such a case would lead to a result contrary to the pur-

pose of the will. It follows that where a trust is single, and its subject-matter consists of personal property and also of real estate which is essential to the execution of the purpose of the testator, if the trust as to the real estate is void, it must fail as to the personal property.

If the will be read in connection with the rules of law we have stated, its meaning and legal effect are quite clear. It is manifest from the language of the will that the purpose or scheme of the testator was to secure the erection and maintenance of an orphans' home upon such part of his real estate as might be necessary for a site for the buildings of the home, to be selected by the party to whom the trustee named in the will might eventually transfer the residue of the estate. This is the only permissible construction of the language of the will, which is to the effect that, in the event that the testator's property shall vest in the Synod, it shall hold the same for the purpose of erecting and maintaining thereon an orphans' home. It is obvious that the word "thereon," as used in the will, does not refer to the personal property of the testator, but only to his real estate; for the buildings could not be erected on personal property. If there could be any fair doubt as to the correctness of this construction of the word "thereon," it is conclusively set at rest in the next clause of the will, which provides that, in the event the Synod fails to accept the proffered gift, the trustee shall hold the property for the purpose of erecting and shall erect upon the real estate an orphans' home.

It appears upon the face of the will that the scheme of the testator, a childless old man, was not to make a gift of his property to the Synod, but to secure the erection and maintenance of a home for orphans on his land. It may be fairly inferred from the will that he was uncertain whether the Synod would be willing to assume the obligation of erecting and forever maintaining such a home upon his land in consideration of the transfer to it of the residue of his property; for otherwise he would have given the residue directly to the Synod for such purposes, as he might lawfully have done. Therefore he gave such residue to Prof. Hanson, in trust to be held by him and thereafter conveyed and transferred to the Synod, if within five years it should elect by resolution to accept such conveyance and

transfer, burdened with the obligation of erecting and maintaining the proposed home. He also provided that, if the Synod during the time limited failed so to accept the residue, his trustee, Prof. Hanson, should, if he should so elect, hold and use the residue for the purpose of erecting and maintaining upon the real estate an orphans' home; but in the event of his failure or neglect so to erect and maintain such home within the five years next succeeding the five years allowed for the Synod to accept the proffered gift, or in the event of his death, the district court, on the application of a resident voter, was authorized to appoint a trustee to hold and use the residue for the erection and maintenance of such orphans' home. The time within which such resident voter must make the application to the court for the appointment of a trustee, and within which such trustee must accept the residue and erect the home, is left uncertain and unlimited.

It is urged by respondent that the Synod had legal capacity to receive the property for an orphans' home by virtue of the provisions of the statute under which it was incorporated. This may be conceded, if the devise had been made to it, so as to vest upon the death of the testator, without any attempt illegally to suspend the power of alienation. Watkins v. Bigelow, 93 Minn. 210, 100 N. W. 1104. The will cannot be so construed without making a new will for the testator. The will, as we construe it, attempted to vest the legal title to the residue of the testator's estate in Prof. Hanson, to be held in trust for the time and for the purpose we have indicated.

Chapter 80, p. 87, Laws 1897, which was in force at the time of the testator's death, authorized the creation of express trusts as follows: "Seventh. For the beneficial interest of any person or persons when such trust is fully expressed and clearly defined upon the face of the instrument creating it, provided such trust shall not endure for a period longer than the life or lives of specified persons in being at the time of its creation, and for twenty-one years after the death of the survivor of such persons: Provided, further, that any and all trusts, which do not permit the free alienation of the legal estate by the trustee so that when so alienated it shall be discharged

from all trusts, shall be deemed and construed as heretofore, and shall not be authorized by the provisions of this subdivision." The effect of the proviso is to leave the then existing law with reference to the suspension of the power of alienation of land in force. If, then, the will suspends the power of alienation of the testator's estate, it is void, at least as to his real estate; for the period of such suspension is not limited to two specified lives in being.

The statute (R. L. 1905, § 3203) provides that: "Such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed." The concrete question is, then, whether upon the death of the testator there were persons in being who could have conveyed an absolute fee in possession to the land. It is clear from the provisions of the will that there was not then in being any person who could so convey the testator's land. No interest vested in the Synod upon the death of the testator, for the land was not to be conveyed to it unless it first accepted the proffered gift with the obligation to erect and maintain the home. The acceptance of the gift cannot be presumed, for the reason that its acceptance involves the assumption of weighty obligations. Again, the will expressly provides the time and manner of acceptance as a condition precedent to the conveyance and transfer of the residue of the estate by the trustee to the Synod. The will purports to give the residue of the testator's estate to his trustee, to hold in trust in order to secure the execution of the testator's purpose and scheme, by conveying it to the Synod if it complies with the condition within the time limited; if it does not, then the trustee may hold and use the property for the purpose of erecting and maintaining the home, provided he elects so to do within the time limited; but, if he does not, then the trustee to be appointed by the court shall take possession of the property and use it for such purpose.

We are of the opinion that the will, at least so far as it purports to devise the land to the trustee named therein, is void, because it illegally attempts to suspend the power of alienation of the legal estate; for the period of the suspension is not to be determined with reference to lives in being, but by years. The trust as to the real estate being invalid for the reasons stated, it cannot be sustained as

a power in trust under section 3252, R. L. 1905; for the statute forbidding the suspension of the power of alienation, except as therein provided, can no more be avoided by a power than by a trust. Garvey v. McDevitt, 72 N. Y. 556.

The appellant further contends that the trust is also void as to the personal property, although the statute forbidding the suspension of the power of alienation applies only to real estate; for the reason that the trust term is not limited as required by law. The statute (chapter 80, Laws 1897) limits the duration of such trusts to a period measured by the life or lives of specified persons in being at the time of its creation and twenty-one years after the death of the survivor of such persons. No lives having been specified in this will, the duration of the trust could not exceed twenty-one years. We assume, for the purpose of the argument only, that this limitation would not commence to run until the residue of the property was ascertained by a settlement of the estate. Notwithstanding this concession, it would seem that the trust is not one which can, without any contingency, be fully executed within twenty-one years, and that it is void. The Synod is, by the will, given five years in which to accept the proposed gift with its burden; the trustee is allowed five years after the expiration of the first limitation of five years in which to elect whether he will retain and use the property for the accomplishment of the testator's scheme; and if he fails so to retain and use the property a resident voter, after the expiration of the second limitation, may apply within an uncertain and unlimited time to the court for the appointment of a suitable trustee willing to accept and execute the trust. The time it would take the court to find such a trustee, if at all, is also uncertain. In any event, we are clearly of the opinion, and so hold, that the trust as to the personal property, whether legal or not, must fall with the void trust as to the real estate, which was absolutely essential to the execution of the declared purpose and scheme of the testator to secure the erection and maintenance of the orphans' home on his farm. The trust as to the real estate being void, its execution as to the personal property is impossible. It follows that the will in question is void, and that the residue of testator's estate must be assigned to his heirs at law.

We regret that the beneficent and cherished purpose of the testator to devote his property to the care of orphan children cannot be realized; but the law limiting the suspension of the power of alienation of land is a wise one, and must be enforced.

The order appealed from is reversed, and cause remanded to the district court for further proceedings in accordance with this opinion.

A petition for reargument having been submitted, the following opinion was filed on December 17, 1909:

PER CURIAM.

It is urged in a petition for reargument herein that decisions decisive of this case were overlooked by the court. This must necessarily refer to decisions of this court, and attention is called to Atwater v. Russell, 49 Minn. 22, 51 N. W. 624, as decisive of respondent's contention that the will here in question does not attempt to suspend the power of alienation of real estate contrary to the statute.

The case was not overlooked, but it was not referred to in the original opinion, for the reason that the distinction between that case and this one seemed to be obvious. In the Atwater case there was a devise of real estate to executors in trust to sell as soon as in their judgment the same could be sold for a reasonable price and not later than ten years after the testator's death. Manifestly such a devise did not, as the court held, suspend the power of alienation for any period, for the power of free alienation of land by the trustees was vested absolutely in them. The provision of the will that they were to sell as soon as in their judgment the land could be sold for a reasonable price put no restriction on the exercise of the power beyond what the law would impose though the provisions were omitted. The statute, Laws 1897, c. 80, under which the trust here in question was attempted to be created expressly provided that no trust shall be authorized thereby which does not permit the free alienation of the legal estate by the trustee. It is by this statute that the question of the validity of the trust must be determined, and

judicial decisions of other states not based upon a like statute are not in point.

Now, by the terms of the will in this case, the power of free alienation by the trustee at all times and without reference to any contingencies was not given to him by the will, on the contrary, he was given no power of alienation except upon the happening of one of the several contingencies named in the will. The distinction between such a case and the Atwater case is apparent.

Petition denied.