## E. L. BUCK v. THOMAS B. WALKER and Others.[1]

July 21, 1911.

Nos. 17,156— (218.)

**Reservation of mineral rights in perpetuity — suspension of power of alienation — public policy.**

A deed conveying lands excepted from the grant all minerals therein, and reserved the exclusive and perpetual right of the grantor, his heirs and assigns, to enter upon the lands, to explore for and remove such minerals upon payment to the owner of the lands the damages thereto by reason of such mining operations, or, at the grantor's option, upon the payment of not to exceed $30 per acre for the land, which would be injured thereby, and take a conveyance thereof. *Held:*

1. The exception and reservation are not contrary to public policy, do not create a perpetuity, nor unreasonably restrict the grantee's use and aliena-

[1] Reported in 132 N. W. 205.

tion of his interest in the land, and are valid. The right reserved is without limit of time.

2. Primarily it is the prerogative of the legislature to declare what contracts and acts are contrary to public policy; hence courts cannot declare contracts authorized by statute void for such reason, but they may, in the absence of a statute, declare void, as against public policy, contracts which are clearly injurious to the interests of the public.

3. The common law as to perpetuities has been superseded by our statute, which requires, not that the absolute fee shall vest, as did the common law, within the time limited, but that there shall be no interest in land inalienable beyond the limitation of two lives in being at the creation of the estate.

4. In an action by the grantee, in a deed containing exceptions and reservations as to minerals, against the grantor to determine adverse claims to the lands, the burden is not on the grantor to prove the existence of minerals in the lands.

Action in the district court for Itasca county to determine adverse claims to certain real estate. The case was tried before Wright, J., who made findings of fact and conclusions of law as set forth in the opinion. Plaintiff's motions to amend the findings of fact were denied. From an order denying plaintiff's motion to vacate the decision, and for a new trial, he appealed. Affirmed.

*Thwing & Rossman,* for appellant.

*Van Derlip & Lum,* for respondents Walker.

*Savage & Purdy,* for respondents Washburn.

START, C. J.

The plaintiff brought this action in the district court of the county of Itasca to determine adverse claims to lots 1 and 2, the northwest quarter of the southeast quarter, and the northwest quarter of the southwest quarter of section 1, and the northeast quarter of the southeast quarter of section 2, hereafter referred to as "tract No. 1;" also the northwest quarter of the southeast quarter in section 2, hereafter referred to as "tract No. 2"—all in township 53 north, in range 26. The complaint alleges that the plaintiff was the owner of the lands, that they were vacant and unoccupied, and that each of the defendants claimed an estate or interest therein or

lien thereon adverse to the plaintiff. The defendant Walker answered separately, to the effect that he was the owner of all minerals, rocks, ores, and oils beneath the surface of tract No. 1. The defendant Washburn answered to the effect that he was the owner of all the ores and minerals in tract No. 2. The claim of each of these defendants was put in issue by the reply thereto.

The here material facts, as found by the trial court, are these:

On October 24, 1903, the defendant Walker was the owner in fee simple of tract No. 1, and on that day he executed a warranty deed thereof to the defendant Washburn, in consideration of three dollars per acre, whereby the parties of the first part, Walker and his wife, conveyed, "save as [therein] excepted and reserved," tract No. 1 to Washburn, his heirs and assigns. Following an exception of the timber from the grant the deed contained the further exceptions from the grant and reservations following:

"The first parties also except and reserve from this land all minerals, rocks, ores, and oils upon or beneath the surface of said lands, or any part thereof, together with the exclusive and perpetual right, power, and privilege in and to the first parties, their heirs, executors, administrators, and assigns, to enter upon and over any part of said lands, to erect or remove buildings, derricks, or any other appliances for mining or removing such minerals, rocks, ores, and oils, and to strip, sink shafts in, bore, mine, or explore any part of said lands, for the purpose of discovering, locating, mining, and removing the same, in such way as they may determine. And if, in so doing, the first parties, their heirs, executors, administrators, or assigns, shall injure or destroy said land for agricultural purposes, or injure or destroy any crop, building, or improvement belonging thereon, they shall pay to the then owner thereof all reasonable and proper damages occasioned by such mining operations; or, at the option of the first parties, or their heirs, executors, administrators, or assigns, they may demand a conveyance to themselves of such portion of said lands as they may designate in writing from time to time, and at a price not exceeding thirty dollars per acre of the lands so designated; and upon tender of said amount, or such other sum as may

115 M.—16.

be agreed upon by the parties in interest, the grantee herein named, or his heirs or assigns, shall execute and deliver forthwith to the first parties, or their heirs or assigns, a good and sufficient deed of conveyance of the lands so designated.

"The foregoing exceptions, reservations, and terms are hereby mutually declared, by the parties hereto, to be conditions upon and in consideration of which the foregoing grant is made, and by the acceptance of this deed the second party, for himself and his heirs, executors, administrators, and assigns, expressly agrees to each of the same, and that the same shall limit the above grant and be effectual against every person claiming, or who may lawfully claim, by, through, or under said second party."

Thereafter, and before the commencement of this action, by mesne conveyances the interest so conveyed in the land to Washburn was acquired by the plaintiff.

On September 17, 1903, the defendant Washburn was the owner in fee simple of tract No. 2, and on that day he executed a warranty deed thereof to Oscar Lewis in consideration of $400, whereby the parties of the first part, Washburn and his wife, conveyed to Lewis tract No. 2, "saving, however, excepting, and expressly reserving to the parties of the first part, their heirs, successors, and assigns, forever, all ores, mines, minerals, fossils, mineral oils, and mineral paints which may be in or upon said lands, with the privilege of searching, digging, boring, shafting, and mining therefor on any and every part of said premises, and removing the same therefrom, together with the right of going to and from any mines thereof or any mining operations thereof on said land, together, also, with the right of building, maintaining as long as needed, and removing when not needed, any buildings, structures, machinery, and appliances needed for such mining operations. But in case the party of the second part shall sustain damages by reason of any such mining operations, either in his dwelling house or other buildings, or the soil be injured for cultivation, the parties of the first part covenant and agree to make full and ample compensation for such damage or injury."

The plaintiff by mesne conveyance acquired, before the commence-

ment of this action, all the interest in tract No. 2 which Lewis acquired by Washburn's deed to him.

The conclusions of law of the trial court from the foregoing facts were, in effect, that the interest and estate of the plaintiff in tract No. 1 are subject to and limited by the exceptions and reservations contained in Walker's deed to Washburn, and that his interest and estate in tract No. 2 are subject to and limited by the exceptions and reservations contained in Washburn's deed to Lewis. Judgment was ordered accordingly, and the plaintiff appealed from an order denying his motion for a new trial.

There was no finding nor evidence as to whether there is or is not any minerals, ores, or oils on the lands in question, or any part thereof.

The primary question raised by the plaintiff's assignments of error is whether the exceptions from the grant in the respective deeds to Washburn and Lewis are valid. The plaintiff can only claim title through such deeds, and, if the exceptions and reservations therein are valid, he took his title subject to them, without reference to the exceptions and reservations, if any, in the deeds to him from his immediate grantors. Therefore there is not here involved any question as to personal covenants or those running with the land. Except as hereinafter stated, the exceptions and reservations in the Walker and Washburn deeds are, in legal effect, substantially the same, and they may be considered together.

1. The plaintiff urges that the exceptions and reservations are void, because they are, on general principles, contrary to public policy; that they are unreasonable restrictions upon the alienation of the plaintiff's fee-simple estate, and unreasonably restrict his use and enjoyment of the same, and create a perpetuity in violation of law.

We had occasion to consider similar exceptions and reservations in the case of Carlson v. Minnesota Land & Colonization Co. 113 Minn. 361, 129 N. W. 768, and held them valid, on the ground that the owner of land may segregate and retain the ownership of minerals and ores from the rest of the land by a conveyance of the land

with an exception as to minerals and ores and a reservation of the right to enter upon the portion conveyed for the purpose of exploring and mining the minerals and ores. While not all of the objections here urged were discussed in the opinion in the case cited, yet the decision that such exceptions and reservations were valid necessarily included all of such objections to their validity. The exceptions from the grant do not impose any limitations upon the power of the grantees freely to convey the interest in the land conveyed to them. Nor do they suspend the power of alienation, for each of the parties may convey his own interest at any time, or they may unite in a deed and thereby convey an absolute fee title to the land. Rong v. Haller, 109 Minn. 191, 123 N. W. 471, 806, 26 L.R.A. (N.S.) 825.

Nor are the exceptions and reservations contrary to public policy, which requires that freedom of contract shall remain inviolate, except only in cases which contravene public right or the public welfare. Primarily it is the prerogative of the legislature to declare what contracts and acts are contrary to public policy, and forbid them; hence public policy is what a statute enacts. Courts cannot declare contracts or acts authorized by statute to be contrary to public policy; but in the absence of a statute they may declare void, as against public policy, contracts which are clearly injurious to the interests of the public. Peterson v. Christensen, 26 Minn. 377, 4 N. W. 623; National Benefit Co. v. Union Hospital Co. 45 Minn. 272, 276, 47 N. W. 806, 11 L.R.A. 437; Holland v. Sheehan, 108 Minn. 362, 122 N. W. 1, 23 L.R.A.(N.S.) 510; 9 Cyc. 481.

Contracts excepting ores and minerals from grants of land with a reservation of the right to enter upon the portion thereof granted are in accordance with long-established usage and have been invariably held by the courts to be valid; hence they are not contrary to, but in harmony with, public policy. If there ever was any doubt as to the question in this state, it has been put at rest by the legislature. In 1901, (See R. L. 1905, §§ 2483–2485) it provided for the reservation, for the use of the state, of all minerals in any of its lands, when sold, which it then owned or might thereafter acquire, with the right of the state and all parties claiming under it to enter

thereon to prospect for, mine, and remove all minerals thereon. This is an express recognition and declaration of the validity of such exceptions and reservations. Clearly contracts between private parties as to lands cannot be held to be void as contrary to public policy, when the statute not only recognizes the validity of similar contracts between the state and private parties, but expressly requires all such contracts to contain a reservation of all minerals in land sold by it. The statute is conclusive upon the question of public policy.

2. The next contention of the plaintiff is to the effect that, if in fact there were no minerals in the land in question, there was then nothing to which the exception from the grant could apply, and the plaintiff has an absolute fee title to the whole of the land, and is entitled to have his title quieted by removing the cloud thereon by reason of the exceptions and reservations in the deeds through which he derives title. It may be conceded that, if there are in fact no ores or minerals in the lands, the plaintiff is the absolute owner thereof, and that if he had brought this action to remove the cloud from his title created by the exception and reservation, and had alleged and established, by clear and satisfactory evidence, that there were no ores or minerals in the lands to which the exception could possibly apply, he would have been entitled to judgment.

The plaintiff urges in this connection that there is no presumption of fact that the lands contain any minerals, and, the defendants having failed to prove such fact, it must be assumed that there are none, and the plaintiff is entitled to judgment. This contention necessarily assumes that the burden was upon the defendants to show that there were minerals in the lands before they can assert any claim by virtue of the exceptions and reservations in the deeds. The lands are vacant and unoccupied, and the plaintiff was required to prove his title, and in doing so he gave in evidence the deeds which show that the parties thereto contracted upon the assumption that there were or might be minerals in the lands, and that the grantors reserved the right, without limit as to time, to enter upon the lands, explore for minerals, and remove them, if any were found. This was a valuable right, and the consideration for the deeds was pre-

sumably fixed with reference to the reservation of such right. Now, if the grantee in such a deed, or his assigns, may bring an action to have such right declared of no effect, and secure a judgment accordingly, unless the grantor proves that there were minerals in the land, it would be palpably contrary to the letter and spirit of their contract, and afford the grantee an easy, but unjust, method of depriving the grantor of a valuable reserved right by the application of a technical rule of evidence. Such ought not to be, and it is not, the law.

The burden of proof was not on the defendants to show the existence of mineral. Nor were they by the terms of the contract bound to exercise their reserved right within what a court or jury might deem to be a reasonable time. Such was not their contract. Carlson v. Minnesota Land & Colonization Co. supra; Adams v. Henderson, 168 U. S. 573, 18 Sup. Ct. 179, 42 L. ed. 584; Marvin v. Brewster, 55 N. Y. 538, 14 Am. Rep. 322.

3. The last contention of the plaintiff which we deem it necessary to refer to relates to the provision in the Walker deed to the effect that, if the grantor shall injure the property of the grantee in exploring for or in removing the minerals, he shall pay him the reasonable damages occasioned thereby, or, at his option, he may demand a conveyance of such portion of the land as he may designate from time to time at a price not exceeding $30 per acre. The plaintiff urges that this provision is void for uncertainty, and because it creates a perpetuity, in violation of the common law and statute. This is not an option to purchase land, within the general meaning of that term. This provision must be construed in connection with the clause providing for the payment of damages; hence it is limited to land which is or will be damaged by exploring for and removing the minerals. Or, in other words, it is optional with the grantor to pay the actual damages to such property, or pay not to exceed $30 per acre therefor, and take a conveyance of the grantee's interest therein. The option (we use the term for convenience) is simply an incident to the exercise by the grantor of his right to explore and remove the minerals, an alternative provision, at the election of the grantor, in place of the agreement to pay the actual damages. It

begins and ends with the exercise by the grantor of his right to explore for and remove the minerals.

If this be·the correct construction of the option, and we hold that it is, then it is not void for· uncertainty; nor does it create a perpetuity in violation of our statute, which has superseded the common law as to perpetuities.  Our statute requires, not that the absolute fee shall vest within the time limited, as did the common law, but that there shall be no interest in land inalienable beyond the limitation of two lives in being at the creation of the estate. Sections 3203, 3204, R. L. 1905.  Under these statutory provisions, alienable contingent interests in land do not create a perpetuity, for they do not suspend the power of alienation.  Simpson v. Cook, 24 Minn. 180; 30 Cyc. 1502, 1519; 22 Am. & Eng. Enc. (2d ed.) 715.

It follows that the exceptions and reservations in each of the deeds in question are valid.

Order affirmed.