## MILLER *v.* AMMON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.

No. 283. Argued April 11, 12, 1892. — Decided May 16, 1892.

The Supreme Court of Illinois having held that the ordinance of the city of Chicago that "no person, firm or corporation shall sell or offer for sale any spirituous or vinous liquors in quantities of one gallon or more at a time, within the city of Chicago, without having first obtained a license therefor from the city of Chicago, under a penalty of not less than $50 or more than $200 for each offence," is valid, this court follows the ruling of that court; and further holds that a contract made in violation of it creates no right of action which a court of justice will enforce.

The general rule of law is, that a contract made in violation of a statute is void; and that when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover.

THE court stated the case as follows:

On March 16, 1887, the plaintiff in error, defendant below, then a citizen and resident of Wisconsin, purchased of the plaintiff, in Chicago, 1125 gallons of sherry wine, and 1100 gallons of port wine, at an agreed price of $5287. The purchase was on ninety days' credit, and the wine was delivered to defendant in that city. Thereafter the defendant having failed to pay for these goods, plaintiff commenced this action in the Circuit Court of the United States for the Southern District of Iowa to recover the purchase price. The defendant pleaded as a defence, that by chapter 24 of the Revised Statutes of Illinois of 1882 it was provided that: "The city council in cities . . . shall have the following powers: . . . To license, regulate and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor, the license not to extend beyond the municipal year in

which it shall be granted, and to determine the amount to be paid for such license;" that this statute was in force at the time of the alleged purchase; that Chicago was a city of that State; that the city council of that city had passed the following ordinance:

"An ordinance concerning the licensing of wholesale liquor dealers.

"SEC. 1. No person, firm or corporation shall sell or offer for sale any spirituous or vinous liquors in quantities of one gallon or more at a time, within the city of Chicago, without having first obtained a license therefor from the city of Chicago, under a penalty of not less than $50 or more than $200 for each offence. But no distiller who has taken out a license as such, and who sells only distilled spirits of his own production at the place of manufacture, shall be required to pay the license herein prescribed on account of said sale.

"SEC. 2. All such licenses shall be issued in accordance with the general ordinances of the city governing licenses, and for every such license there shall be charged at the rate of $250 per annum;"

that plaintiff was then a wholesale liquor dealer in the city of Chicago; that he was not a distiller, and had not a distiller's license; that the wine mentioned in the petition was vinous and intoxicating liquor, within the meaning of said ordinance; and that the sale of the wine mentioned was in violation of said law and ordinance. A demurrer to this answer was filed, and, after argument, was sustained; and the defendant electing to stand by his answer, judgment was rendered against him for the amount claimed in the petition. To reverse such judgment the defendant sued out this writ of error.

*Mr. C. C. Cole* for plaintiff in error.

*Mr. Edgar C. Blum* for defendant in error. *Mr. Louis J. Blum* was on the brief.

MR. JUSTICE BREWER delivered the opinion of the court.

Two questions are presented: first, is the ordinance valid?

second, if so, can the plaintiff recover for liquor sold in violation of its terms?

The first question must be answered in the affirmative. The precise question, on the very ordinance, was presented to the Supreme Court of Illinois, and determined by it in the case of *Dennehy* v. *Chicago*, 120 Illinois, 627. Counsel for defendant in error strenuously insist that that decision is not controlling on this court in this case, because it was not announced until May, 1887, and after this purchase had taken place. They say that this is a controversy between citizens of different States, in which the parties have a right to the independent judgment of the Federal tribunals; that, prior to such decision, there had been no determination by the courts of Illinois of the validity of the ordinance; and that the decision in the *Dennehy Case* was in disregard of the general course of the legislation of the State of Illinois in respect to the liquor traffic, and of the spirit of at least two decisions of that court, *Strauss* v. *Pontiac*, 40 Illinois, 126, 301, and *Wright* v. *The People*, 101 Illinois, 133. They refer us to the cases of *Pease* v. *Peck*, 18 How. 595; *Chicago* v. *Robbins*, 2 Black, 418; *Butz* v. *Muscatine*, 8 Wall. 575; *Burgess* v. *Seligman*, 107 U. S. 20; *Carroll County* v. *Smith*, 111 U. S. 556; *Gibson* v. *Lyon*, 115 U. S. 439; and *Anderson* v. *Santa Anna Township*, 116 U. S. 356, as instances in which this court did not consider itself concluded by the decision of the state court.

While not disposed to limit or qualify in any respect what has been said so frequently as to the right and duty of independent judgment, we think that this is a case in which the decision of the Supreme Court of Illinois should control. The question is one of a particularly local character, affecting solely the internal police of the State, in respect to which we have no reviewing power, and in which is involved no matter of a Federal character, or of general commercial law. The question as to what licenses shall or shall not be required of those who engage in the liquor traffic, is a matter properly submitted to the States for determination. There is no natural or Federal right claimed to have been trespassed upon by this ordinance, and the regulations as established and upheld by

the state legislature and state tribunals should not be disregarded in the Federal courts. The decision in the *Dennehy Case* determines for the people of the State of Illinois that at the time of the transaction in controversy there was this valid ordinance in the city of Chicago requiring a license. Why should not such decision conclude this plaintiff, as all other citizens of the State, in all their dealings within the State? It will be noticed that this is not a case in which a citizen of another State calls upon the Federal courts to ignore the judgment of the state court, because of some supposed infringement by it upon his rights. It is a citizen of Chicago, and Illinois, who is asking us to disregard the decision of the highest court of his own State. If it be said that there is not, simply a question of municipal or police regulation, but also one of contract rights, the reply is that no question of contract rights can arise till after that of the validity of the ordinance is determined; and also that the party who now seeks to raise the question is one who, as a citizen of the State, ought to be concluded by the decisions of its highest court upon this local matter.

There has been no change in the rulings of the Supreme Court on this question. The prior cases referred to contain nothing inconsistent with the *Dennehy Case*. In *Strauss v. Pontiac*, the court held that authority in the charter to prohibit "tippling-houses and dram-shops," did not sustain an ordinance to prohibit generally the sale of spirits or beer. In other words, the charter power was directed towards the character of the house, and not to the matter of sales; and the ruling was, that the former did not include the latter. In *Wright v. The People*, it was held that the dram-shop act applied to sales made by a druggist in good faith and for medical purposes. There is no force in the argument, that because the court in the course of its opinion said that the city council had authority under the charter to grant permits to druggists to sell intoxicating liquors by the retail — it is to be implied that the court intended to decide that the council had no power to grant like permits to sell at wholesale. The statement was simply by way of argument to show that the drug-

gists were within the scope of the dram-shop act, and was by no means a decision that the city council had no other authority than to permit sales by druggists at retail. So that without any contradiction in its rulings, the first and only time that this question was presented to the Supreme Court it held that this ordinance was within the powers granted to the city council; and as this decision was rendered only two months after this sale, and was in affirmance of the decisions of the trial and intermediate appellate court, it is but fair to presume that the decisions of those lower courts had been rendered before this transaction.

It must not be implied from what we have said, that we differ from the Supreme Court of Illinois as to the validity of this ordinance. The charter authority is given in broad and comprehensive terms, " to license . . . the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor." There is no limitation or qualification as to the manner of sale, whether at wholesale or retail, or as to the character of the house at which the business is to be carried on, whether a dram-shop, a grocery or a drug store. If it was intended, and doubtless it was, to give to the city council full authority over the sale of intoxicating liquors, words more broad or comprehensive could not easily have been selected. There is no doubtful language in either the charter or the ordinance. Plainly as words can express is full power given by the one to the city council, and as plainly a license of a wholesale dealer demanded by the other.

We do not, however, place our decision so much on this latter ground, nor do we care to follow counsel in their ingenious effort to read into this section of the charter words of limitation. It is enough that the language being upon its face clear, full, and comprehensive, the Supreme Court of the State has decided that it gave power to the council to pass this ordinance, and that it is valid. That decision concluded this plaintiff, a citizen of the State, not only in criminal prosecutions, but also in civil actions, not only in the state, but also in the Federal courts.

Passing to the other question, that must be answered in the

negative.  The general rule of law is, that a contract made in violation of a statute is void; and that when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover.  Pollock's Principles of Contracts, pp. 253 to 260; *Pernn* v. *Bornman,* 102 Illinois, 523; *Alexander* v. *O'Donnell,* 12 Kansas, 608; *Gunter* v. *Leckey,* 30 Alabama, 591; *Kennedy* v. *Cochrane,* 65 Maine, 594; *Bank of the United States* v. *Owens,* 2 Pet. 527, 539; *Pangborn* v. *Westlake,* 36 Iowa, 546, 549; *Harris* v. *Runnels,* 12 How. 79, 84.  In *Bank* v. *Owens,* this court said: "There can be no civil right where there can be no legal remedy; and there can be no legal remedy for that which is itself illegal."  There are some exceptions to this general rule, and the last two cases cited furnish instances thereof.  These exceptions are based upon a supposed intent of the legislature.  In *Pangborn* v. *Westlake,* it was thus stated how the exception should be determined: "We are, therefore, brought to the true test, which is, that while, as a general rule, a penalty implies a prohibition, yet the courts will always look to the language of the statute, the subject matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if, from all these, it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold, and construe the statute accordingly."  And in *Harris* v. *Runnels,* this court, after noticing some fluctuations in the course of decision, and observing "that we have concluded, before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty, or a penalty only for doing a thing which it forbids, that the statute must be examined as a whole, to find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not to be so," added: "It is true that a statute, containing a prohibition and a penalty, makes the act which it punishes unlawful, and the same may be implied from a penalty without a prohibition; but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it.

When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void."

In the light of these authorities the solution of the present question is not difficult. By the ordinance, a sale without a license is prohibited under penalty. There is in its language nothing which indicates an intent to limit its scope to the exaction of a penalty, or to grant that a sale may be lawful as between the parties, though unlawful as against its prohibitions; nor when we consider the subject matter of the legislation, is there anything to justify a presumed intent on the part of the lawmakers to relieve the wrongdoer from the ordinary consequences of a forbidden act. By common consent the liquor traffic is freighted with peril to the general welfare, and the necessity of careful regulation is universally conceded. Compliance with those regulations by all engaging in the traffic is imperative; and it cannot be presumed, in the absence of express language, that the lawmakers intended that contracts forbidden by the regulations should be as valid as though there were no such regulations, and that disobedience should be attended with no other consequence than the liability to the penalty. There is, therefore, nothing in the language of the ordinance or the subject matter of the regulations, which excepts this case from the ordinary rule that an act done in disobedience to the law creates no right of action which a court of justice will enforce.

For these reasons the judgment of the Circuit Court will be

*Reversed, and the case remanded, with instructions to overrule the demurrer to the answer.*