76 P.2d 1156

**NIBLACK et al. v. SEABERG HOTEL CO. et al.**

No. 4340.

Supreme Court of New Mexico.

Feb. 28, 1938.

Hugo Seaberg, of Raton, and Reid & Iden, of Albuquerque, for appellants.

L. S. Wilson, of Raton, and Irving B. Campbell, of Chicago, Ill., for appellees.

BRICE, Justice.

The principal questions are: (1) Whether the deed of trust sought to be foreclosed is void; and (2), if valid, whether plaintiffs (appellees here) were proper parties plain-

tiff, and therefore authorized to foreclose such deed of trust in this action. The facts are:

On the 15th day of December, 1919, defendant Hugo Seaberg executed 140 coupon bonds of that date, of the par value of $500 each, payable to bearer: The defendant the Seaberg Hotel Company, a New Mexico corporation, secured said bonds by executing and delivering a deed of trust of even date therewith, to the Chicago Title & Trust Company, a corporation, and William C. Niblack as trustees, by which there was conveyed to the trustee certain real estate within the city of Raton, N. M., on which was located the hotel.

$44,000 of the $70,000 was used to pay off the corporate obligations of the defendant hotel company, which were secured by a deed of trust on the same real estate, and the balance of the proceeds of such loan ($25,287) was paid to the defendant Hugo Seaberg, president of said hotel company, pursuant to authority granted by the stockholders and directors of said corporation, and was used to pay for the construction of additions to the hotel building of said corporation. The Seaberg Hotel Company guaranteed said bonds by an indorsement thereon, as well as by the deed of trust mentioned; both of which acts were authorized by the board of directors of said corporation and its stockholders.

The entire capital stock of the defendant Seaberg Hotel Company, consisting of thirty-five shares, was held; thirty-three shares in the name of the defendant Hugo Sea-berg; one share in the name of Lottie V. Seaberg, his wife; and one share in the name of Hilda M. E. Seaberg, his sister.

Bonds numbered 1 to 44 and all interest thereon were paid. $32,000 face value of the unpaid bonds are owned by the plaintiff Frances N. Niblack. The plaintiff Chicago Title & Trust Company, as trustee, is the legal owner and holder of the remainder of said bonds, which are of the face value of $16,000. That said $48,000, together with certain interest due thereon, has not been paid; of which $30,000 with some interest on all unpaid bonds, was past due at the date of the decree. All payments of bonds and interest were made by sending the money from Raton, N. M., to Chicago, Ill.

The plaintiff Chicago Title & Trust Company was appointed a trustee by the terms of the trust deed, and resigned on the 23d day of October, 1934, upon the stated ground that it was not authorized to transact business in the state of New Mexico.

The other trustee, William C. Niblack, died in 1920. His successor, Harrison B. Riley, resigned as trustee on October 10, 1934. The holders of all the $48,000 of bonds outstanding, appointed the plaintiff Austin H. Niblack as successor trustee.

Under the terms of the bonds and trust deed, a legal owner and holder of any of the said bonds, after a default in the payment of any of them, or any interest thereon for thirty days, could at his option, declare the entire principal sum remaining unpaid, due, and payable. That acting thereunder, the holders of the bonds not

due elected to declare, and did declare, the unpaid principal and accrued interest due and payable.

The court found that there was $48,000 in principal and $30,954.56 in interest due on the bonds; that defendants were due plaintiff Frances H. Niblack $2,940.63 for assessments, insurance, and abstract paid for by her; and $6,500 attorney's fees; which the court found to aggregate the sum of $88,395.19.

During all the transactions mentioned, the plaintiff Chicago Title & Trust Company had its office and place of business in Chicago, Ill., and had no agent in the state of New Mexico, and was not authorized to do business in New Mexico. It had been named as trustee in numerous similar deeds of trust in which lands in New Mexico were transferred as security to it as trustee.

The following statutes, it is said, render the deed of trust void, because the trustee Chicago Title & Trust Company had never obtained a permit to do business in New Mexico.

"Until such corporation so transacting business in this state shall have obtained said certificate from the state corporation commission, it shall not maintain any action in this state, upon any contract made by it in this state: Provided, that nothing herein shall prevent the enforcement of any contract made prior to March 15, 1905, which it could have enforced prior thereto." Section 32-207, N.M.Sts.1929.

"Every foreign corporation transacting any business in any manner whatsoever, directly or indirectly, in this state, without having first obtained authority therefor, as hereinabove provided, shall for each offense forfeit to the state the sum of two hundred dollars, to be recovered with costs in an action prosecuted by the attorney general in the name of the state." Section 32-209, N.M.Sts.1929.

The Chicago Title & Trust Company was appointed trustee by the terms of the deed of trust, and its powers and duties set out in detail. There seems to have been some doubts among the parties as to whether this company was authorized to act as trustee because of the statutes mentioned, and to obviate any difficulty regarding this situation the trust deed further provided:

"Article 13. William C. Niblack, of Chicago, Illinois, is hereby appointed co-trustee herein with all the powers incident to the trusteeship under this instrument, but it is hereby agreed that he shall not be called upon to do or perform any of the duties provided for herein, unless the Chicago Title and Trust Company is deemed to be incapable as a foreign Trust Company from acting hereunder; in that event said William C. Niblack shall assume all the duties of trusteeship hereunder herein conferred upon the said Chicago Title and Trust Company and himself, or either of them. In case of the death, resignation or other inability of the said William C. Niblack to act, then Harrison B. Riley is hereby appointed successor to William C. Niblack with like powers and authority as is herein vested in the said William C. Niblack.

"This trust deed and the bonds secured hereby are to be governed and construed according to the laws of New Mexico, where the contract is entered into and completed."

William Niblack died in 1920, and Harrison B. Riley succeeded him as trustee. Both Riley and Chicago Title & Trust Company resigned as trustees in 1934.

In denying the invalidity of the deed of trust the plaintiffs state: (1) That the acceptance of the appointment as trustee by the Chicago Title & Trust Company was not "transacting business" in New Mexico; (2) that by article 13 of the deed of trust just quoted, William C. Niblack, an individual, was appointed trustee with all the powers of the plaintiff trust company to be exercised in case the latter was incapable of acting as trustee; (3) that the contract was in fact made in Chicago and not in New Mexico; (4) but that in any event contracts made by corporations not authorized to transact business in New Mexico are not void.

We need not consider any of these contentions except the last.

■■■ The general rule is that a contract made in violation of a statute prescribing a penalty is void, but this general rule is subject to the proviso: That if from the language of the statute, its subject-matter, and the purpose sought to be accomplished in its enactment, it is manifest that it was not intended to render such contracts void, the courts will so hold.

The general rule is stated in Miller v. Ammon, 145 U.S. 421, 12 S.Ct. 884, 886, 36 L.Ed. 759, as follows: "The general rule of law is that a contract made in violation of a statute is void, and that, when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover. Pol.Cont., pp. 253, 260; Penn v. Bornman, 102 Ill. 523; Alexander v. O'Donnell, 12 Kan. 608; Gunter v. Leckey, 30 Ala. 591; Kennedy v. Cochrane, 65 Me. 594; Bank of United States v. Owens, 27 U.S. [527] 2 Pet. 527, 539 (7 L.Ed. 508, 512); Pangborn v. Westlake, 36 Iowa 546; Harris v. Runnels, 53 U.S. [79] 12 How. 79 [13 L.Ed. 901, 903]. In Bank of United States v. Owens, this court said: 'There can be no civil right where there can be no legal remedy, and there can be no legal remedy for that which is itself illegal.' There are some exceptions to this general rule, and the last two cases cited furnish instances thereof. These exceptions are based upon a supposed intent of the Legislature. In Pangborn v. Westlake it was thus stated how the exception should be determined: 'We are therefore brought to the true test, which is that while, as a general rule, a penalty implies a prohibition, yet the courts will always look to the language of the statute, the subject-matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if, from all these, it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold, and construe the statute accordingly.' And in Harris v. Runnels this court, after noticing some fluctuations in

the course of decision, and observing 'that we have concluded, before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty, or a penalty only for doing a thing which it forbids, that the statute must be examined as a whole, to find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not to be so,' added: 'It is true that a statute, containing a prohibition and a penalty, makes the act which it punishes unlawful, and the same may be implied from a penalty without a prohibition; but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it. When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void.' "

It was stated in a relatively recent case: "The general rule of law is that an act done in violation of a statutory prohibition is void and confers no right upon the wrongdoer; but this rule is subject to the qualification that when, upon a survey of the statute, its subject-matter and the mischief sought to be prevented, it appears that the legislature intended otherwise, effect must be given to that intention. Miller v. Ammon, 145 U.S. 421, 12 S.Ct. 884, 36 L.Ed. 759; Burck v. Taylor, 152 U.S. 634, 14 S.Ct. 696, 38 L.Ed. 578; Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679." Waskey v. Hammer, 223 U.S. 85, 32 S.Ct. 187, 189, 56 L. Ed. 359.

It was stated by this court:

"The defense interposed here is that the consideration of the contract out,of which the notes and trust deed originated, and which they were given to secure, was based upon the violation of a penal statute of the United States. We think the authorities uniformly hold that an act done in violation of a statutory prohibition is void, and confers no right upon the wrongdoer. * *

"We are aware that the rule above stated is subject to the qualification that when upon a survey of the statute, and from its subject-matter, and the mischief sought to be prevented, it appears that the Legislature intended that the violation of the statutory prohibition should not render a contract void, effect must be given to that intention, but a survey of the statute in question fails to disclose any such intention." Third National Exch. Bank v. Smith, 17 N.M. 166, 125 P. 632, 635.

Sections 32-207 and 32-209 are parts of the same act of the legislature, chapter 79, N.M.Laws 1905, and must be construed together. There is nothing immoral in transacting business in this state without a permit to do so; nor is it made a crime to do so; it only subjects the offender to civil damages. The statute does not stand alone, but must be construed with section 32-207, supra, and, when so construed, it is made clear that the Legislature never intended to invalidate such contracts. The language of the latter section indicates that actions upon such contracts are only suspended until a corporation violating its

provisions has complied with the law. This is the view expressed by courts generally in cases in which similar statutes have been construed. The cases are numerous and are collected in annotations in 2 Ann.Cas. at pages 63 et seq., and 75 A.L.R. 457. The annotator of 75 A.L.R. 457 states:

"In a number of states it is held that a statutory provision prohibiting foreign corporations from doing business within the state until they have complied with certain requirements does not render a contract made within the state by a noncomplying corporation wholly void but merely suspends the right of the corporation to enforce the contract until after it has complied with the statutory requirements, and that a compliance with the statute subsequently to the making of a contract within the state is a compliance with the statute at such a time as enables the corporation to maintain the action.

"Sometimes a statute requiring a foreign corporation to file a certificate, appoint an agent, or comply with other conditions, merely provides, either in express terms or by implication, that a foreign corporation shall not be permitted to maintain suits in the courts of the state until the statute has been complied with. Such a statute does not render void or illegal contracts made in the state by a foreign corporation which has not complied with the conditions. It merely suspends the remedy, and, if a corporation complies with the statute after making a contract, it may sue thereon. * * A statute providing that no foreign corporation shall maintain any action in the state upon any contract made by it therein, after the taking effect of such statute, 'until it shall have fully complied with the requirements of this act,' and have procured a certificate to that effect from the secretary of state, does not invalidate a contract made in the state by a corporation which has failed to comply with the requirements of the statute, but merely prohibits the right of enforcement of the contract by the corporation until it shall comply with the statute." 9 Fletcher Cyclopedia Corporations, § 5944.

" * * * Some statutes by their terms merely suspend the right to enforce contracts made in the state until compliance has been made. Thus compliance with the statutory requirements subsequent to the making of a contract in the state has been held to enable a foreign corporation to maintain an action thereon in the courts of the state where the statute merely denied the right to enforce such contracts 'until' compliance; 'so long as' there was a failure to comply, 'unless it shall have complied,' 'unless it shall have first complied,' 'without first' complying, 'without' complying while unregistered, or 'without alleging and proving' compliance. * * *" 14A C.J. title "Corporation," § 4007.

The question was referred to but not decided in Utah Construction Co. v. St. Louis C. & E. R. Co. et al., D.C. of N.M., 254 F. 321, in which it was suggested by District Judge Pollock that if the question was involved, while not devoid of doubt, he would hold that a contract so made was void, upon

the theory that it was in violation of a penal statute. Judge Pollock suggested that, as our statute was adopted from New Jersey, and such having been the conclusion of the courts of that state, we had adopted this construction with the statute. We find, however, that this is incorrect, as the following quotation will show:

"His defenses are that the agreement was negotiated, consummated, and executed in this state before the corporation was authorized, as required by section 97 of our Corporation Act (2 Comp.St.1910, p. 1657 [R.S.1937, § 14:15–3]), to transact business in this state. * * *

"The bill of complaint was filed March 16, 1922. Section 98 of the Corporation Act (page 1658 [R.S.1937, 14:15–4]) bars a foreign corporation from maintaining any action upon a contract made in this state, 'until such corporation so transacting business shall have obtained said certificate of the secretary of state.' Such certificate having been obtained prior to the filing of the bill of complaint, this action may be maintained, notwithstanding the provisions of sections 97 and 100 [R.S.1937, 14:15–6] of the Corporation Act." Day v. Stokes et al., 97 N.J.Eq. 378, 127 A. 331.

The wording of our statutes indicates that such was not the intent of the Legislature. There is no specific provision that such contracts are void, and the words, "until such corporation, etc., shall have obtained said certificate * * * it shall not maintain any action in this state, * * *" would imply that when it had obtained such certificate then it could maintain an action upon a contract made in the state before obtaining such certificate.

■ The deed of trust was not void.

We need not determine whether the contract in question was made outside of the state; or whether the appointment of the plaintiff trust company as trustee (a purely representative capacity), by defendant hotel company, would nullify a contract made for the benefit of the bondholders, merely because such trustee had not complied with the laws mentioned. It may be doubted if this alone was "transacting business" in New Mexico. 14A C.J. title, "Corporations," § 3999; Broadway Bond St. Co. v. Fidelity Printing Co., 182 Mo.App. 309, 170 S.W. 394; Martin v. Bankers' Trust Co., 18 Ariz. 55, 156 P. 87, Ann.Cas.1918E, 1240.

Austin H. Niblack, substitute trustee, was authorized to maintain this suit under the terms of the deed of trust. It is provided therein for the resignation of the trustees and, "* * * in case of a vacancy in the office of Trustee or otherwise, a successor or successors may be appointed by the holder or holders of a majority of the bonds then outstanding by an instrument in writing duly signed and acknowledged by them, which said instrument shall be recorded in the office of the Recorder of Colfax County, New Mexico. * * *"

The court found: "That the Chicago Title & Trust Company was at all times the trustee under said trust deed until its resignation thereof on the twenty-third day of October, 1934; that William C. Niblack

died in 1920; that thereafter Austin H. Niblack was appointed and qualified as successor trustee upon the refusal of Harrison B. Riley, designated alternate trustee, to act; that the appointment of the said Austin H. Niblack was in all things regular and in accordance with the provisions of the said trust deed; that said trust deed while made in the State of Illinois, contained a provision to the effect that it was to be governed by the laws of the State of New Mexico, and that said Chicago Title and Trust Company was not doing business in the State of New Mexico."

 This finding sufficiently establishes the authority of the plaintiff Austin H. Niblack, to foreclose the deed of trust.

The plaintiffs, Frances H. Niblack and Chicago Title & Trust Company, being the owners of the bonds in suit, are proper, though not necessary, parties plaintiff.

The court entered a joint judgment against Hugo Seaberg and defendant Seaberg Hotel Company, not only for the full amount of principal of the bonds and accumulated interest thereon, but, in addition thereto, $2,940.63 paid out for an abstract, fire insurance, and paving assessments, and $6,500 as attorney's fees.

Defendant Hugo Seaberg's connection with the transaction was as principal on the bonds, which did not provide for attorney's fees or authorize the expenditure of the other items by the trustee. These were provided for in the deed of trust, to which defendant Hugo Seaberg was not a party. The finding that the defendant Hugo Seaberg was indebted to the trustee in these amounts was error.

Numerous other questions are raised by the defendants, none of which have merit sufficient for special consideration; and all of which are resolved against the defendants.

The decree of the district court is affirmed as to the defendant Seaberg Hotel Company, and reversed as to the defendant Hugo Seaberg, with instructions to amend the decree in conformity herewith. Costs will be awarded in favor of the plaintiff Niblack, trustee, against the defendant Seaberg Hotel Company, and in favor of the defendant Hugo Seaberg against the plaintiffs.

It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.