82 P.2d 909

**DELGADO et al. v. DELGADO.**

No. 4321.

Supreme Court of New Mexico.

July 15, 1938.

Rehearing Denied Oct. 6, 1938.

C. R. McIntosh, of Santa Fé, for appellant.

Kiker & Sanchez, of Santa Fé, for appellees.

BICKLEY, Justice.

Action by plaintiffs to set aside a warranty deed made and executed by the mother of defendant and the plaintiffs on the ground that the deed was made for the purpose of placing the title to the property described in the deed in the defendant so that the tax exemption laws of this state would apply to said property and for that purpose only, and that there was no consideration given for the execution of said deed, and it was alleged that the grantor at the time of the execution and delivery of said deed did not know the legal effect of the execution and delivery of said deed and did not have independent advice as to the full legal effect thereof. It is prayed that the plaintiffs be decreed to have an undivided interest in the property described in the deed or in the alternative that the defendant be deemed to be a trustee and to hold the deed in trust for the plaintiffs. Defendant answered denying all the allegations of the complaint except admitting the relationship of the parties to each other and the grantor. The defendant particularly denied that the deed was made to defendant for the purpose of obtaining exemption from taxes as an ex-service man and denied that there was no consideration given for the execution of said deed, and denied that the grantor named therein did not know the legal effect of said deed; and further answering, the defendant alleged that for many years the defendant had contributed to the support and maintenance of his mother, the grantor; that he assisted her with funds and money; that he made repairs upon the house situated on the property involved in the action and paid the taxes due on said property and denied that he acknowledged or admitted that plaintiffs had any interest in said property.

The statute said to be violated is Sec. 141-1408, Code of 1929. It imposes a penalty of a fine and/or imprisonment for claiming an exemption on property not owned and says: "and any or all property conveyed with intent to violate any of the provisions of this act shall escheat to the state upon proper proceedings therefor."

After the trial the court made findings of fact and conclusions of law and thereon rendered judgment for plaintiff.

In the course of the proceedings plaintiffs abandoned their claim that a trust had been created in their favor by virtue of the conveyance. The court failed or refused to sustain plaintiffs' claim that the grantor did not know what she was doing or the effect of her conduct. The court refused to find with defendant that he had

made the contributions to the grantor's benefit heretofore recited.

The extent to which the court sustained the plaintiffs' pertinent allegations controverted by defendant is reflected in the court's findings Nos. 6, 7 and 8, as follows:

"6. That said Miguel Marcos Delgado, defendant, paid nothing to the said Lucia Ortiz de Delgado, for or on account of the execution and delivery of said deed for said real estate.

"7. That the said Lucia Ortiz de Delgado received nothing of benefit from the said Miguel Marcos Delgado for or on account of the execution and delivery of said deed.

"8. That the sole consideration for the execution and delivery of said deed by the said Lucia Ortiz de Delgado to the said Miguel Marcos Delgado was in order that payment of taxes on the sum of $2000 in valuation on said real estate might be saved in each year, the said Miguel Marcos Delgado being an honorably discharged soldier from the United States Army, who was engaged in military service during the World War; and that there was no other consideration for the execution and delivery of said deed from the said Lucia Ortiz de Delgado to the said Miguel Marcos Delgado."

Appellant challenges these findings of fact vigorously on the ground that there was abundant evidence much of it uncontradicted which would have supported his claim presented by his requested findings of fact and conclusions of law that the consideration for the conveyance was the financial aid he had rendered to his mother, the grantor, or that such financial aid, together with other circumstances showed that the real consideration was the love and affection which the grantor bore the grantee. We find it unnecessary to review these findings. We assume without deciding that the evidence did not warrant the giving thereof. Also we assume without deciding that the challenged findings of fact are supported by the evidence.

Appellant asserts the proposition that there exists a right of everyone in the absence of fraud to dispose of his own property according to his volition. It is uncontradicted in this case that the deed was properly executed, acknowledged and delivered in accordance with legal requirements. From this appellant argues that under the provisions of Sec. 45-608, Code 1929, a presumption of consideration arises. That section reads as follows: "Every contract in writing hereafter made shall import a consideration in the same manner and as fully as sealed instruments have heretofore done." Appellant further contends that as the deed is a sealed instrument it imports a consideration under the principles of the common law and in addition to this the deed itself recites a consideration of $1.00 and contains an acknowledgment of the grantor that such consideration had been re-

ceived, and therefore that the court erred in admitting parol evidence for the purpose of contradicting the recitals of consideration contained in the conveyance. Appellant cites 10 R.C.L., p. 1052, § 247, Title "Evidence" as illustrative of statements of law writers on the subject: "Consideration absent or failing. * * * Nor may a deed to real property be invalidated by parol evidence showing that there was no consideration for its execution, when it contains a recital that a consideration has been received by the grantor and there is no allegation of fraud, accident or mistake."

We do not understand appellees to challenge these principles. They say that they alleged and proved fraud. This conducts us to a consideration of the decisive question in the case. The findings of the court do not show fraud upon the grantor. There is no finding that she did not know exactly what she was doing when she made, executed and delivered the deed. No undue influence of the grantee over the grantor is shown as inducing the transaction. Appellant in his reply brief correctly appraises the record when he asserts: "The court will note, in reading the findings, that the trial court very carefully avoided making any finding that the execution of the deed was procured by undue influence, mistake, or by reason of any false or fraudulent representations made by defendant to his mother, and, in fact, upon the close of the case an offer of a trial amendment to the pleadings was made by plaintiffs in an effort to en-large the pleadings in this case to include undue influence but this effort on their part was denied by the court and any question of undue influence was thereby specifically eliminated by the trial court."

Such fraud as the court found was a fraud upon the state participated in by the grantor.

Appellees' contention is that even though there was no fraud established as against the grantor, that where a deed is executed contrary to a prohibitory statute, it is therefore illegal and fraudulent, and there arises a qualification of the rule contended for by appellant. Appellees quote the language of the court in Lyman v. Kimball, 82 N.H. 232, 131 A. 690, 691, that: "The rule which forbids the introduction of parol evidence to contradict, add to, or vary a written instrument does not extend to evidence offered to show that the contract was made in furtherance of objects forbidden by statute, by common law, or by the general policy of the law. * * * The rule will not prevent a court, either of law or of equity, from looking through all disguises in order to detect fraud or illegality, and inquiring into the true nature of the transaction and the intent of the parties."

Ordinarily where parties to illegal contracts are in pari delicto, a court will leave them where it finds them, whether the contract is executory or executed, refusing relief to both. This action of the court gives no validity to the transaction, but deprives the parties of their right to

either enforce the contract or to be relieved from it. 13 C.J., Title "Contracts", § 440. But the plaintiffs contend there is a well recognized exception to this rule; that is where such contracts are against the public policy of the state or against public interests. There are authorities supporting this view.

"Although the parties are in pari delicto, yet the court may interfere and grant relief at the suit of one of them, where public policy requires its intervention, even though the result may be that a benefit will be derived by a plaintiff who is in equal guilt with defendant. But here the guilt of the parties is not considered as equal to the higher right of the public, and the guilty party to whom the relief is granted is simply the instrument by which the public is served. But 'courts are and should be cautious in affording relief to a fraudulent debtor or other violator of the law under this exception, and should act only where it is evident that some greater public good can be subserved by action than by inaction.'" 13 C.J., Title "Contracts", § 441.

 We think the case at bar is analogous to situations where a grantor makes a conveyance for the purpose of defrauding his creditors and thereafter seeks to have his conveyance set aside. The state is the creditor, the taxpayer, the debtor, and the statute is designed to discourage conveyances to defeat the tax debt. In such situations the rule is that the conveyances of real property to defraud creditors, though void as to creditors are nevertheless valid and binding on the parties themselves and their personal representatives. Moore on Fraudulent Conveyances, at page 630, states: "The ancient and well known maxims that a right of action cannot arise out of fraud (Ex dolo malo non oritur actio), and that where both parties are equally in fault or in the wrong, the condition of the defendant and possessor is preferable (In pari delicto potior est conditio defendentis et possidentis), are the basis of the familiar rule that the parties to a transaction tainted with fraud shall be left by the courts in the situation in which they have placed themselves, without aid from the courts. Hence, the general rule that a conveyance or transfer of property made to defraud creditors, though void as to creditors, is valid and binding on the parties thereto, their privies, assigns, and persons claiming under them, and conveys title as against all parties except the creditors of the grantor, or any one not affected by the fraud, and is voidable only as against those who might be defrauded thereby." While we do not doubt the power of the court to resort to the fiction of acting for the public through the instrumentality of a guilty party to whom relief is granted from the effect of an illegal transaction, we agree with the suggestion in the Corpus Juris text last above quoted that this power should be exercised with caution. It is not invariable that an act done in violation of a statutory prohibition is absolutely void. A survey of the statute said to be violated must be made in order

to discover the legislative intent. The statute in question does not declare that a conveyance of property to a person entitled to exemption with intent to secure said exemption to such person not entitled thereto shall be absolutely void as between the parties to the transaction. The statute says that persons violating the provisions of the act shall be punished by a fine or imprisonment in the penitentiary or by both such fine and imprisonment, at the discretion of the court, and any or all the property conveyed with intent to violate any of the provisions of this act shall escheat to the state upon proper proceedings therefor. The question arises whether the legislature having delineated certain penalties has not excluded others than such as are declared in the statute itself.

In the case of McBroom v. Scottish Mortgage & Land Investment Company, 153 U.S. 318, 14 S.Ct. 852, 38 L.Ed. 729 (affirming the decision of the Territorial Supreme Court, 6 N.M. 573, 587, 588, 30 P. 859), where it was contended that all written contracts providing for the payment of interest at a higher rate than twelve per cent were void because such contract as to the interest was unlawful, it was said (30 P. page 863): "If the legislature had intended to forfeit the entire debt, or to render the transaction void, nothing would have been easier than to have so declared." In the course of the discussion the court said (14 S.Ct. page 854):

"Of course, effect must be given to the intention of the legislature as manifested by the words of the statute, interpreted according to their natural signification. And, in ascertaining that intention, all of its provisions must be considered together. As said in Harris v. Runnels, 12 How. 79, 84 [13 L.Ed. 901]: 'Before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty, or a penalty only for doing a thing which it forbids, the statute must be examined as a whole to find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not to be so. In other words, whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, that it is not to be taken for granted that the legislature meant that contracts in contravention of it were to be void, in the sense that they were not to be enforced in a court of justice.' So, in Pratt v. Short, 79 N.Y. 437, 445 [35 Am.Rep. 531]: '*A prohibitory statute may itself point out the consequences of its violation, and if, on a consideration of the whole statute, it appears that the legislature intended to define such consequences and to exclude any other penalty or forfeiture than such as is declared in the statute itself, no other will be enforced,* and if an action can be maintained on the transaction of which the prohibited transaction was a part, without sanctioning the illegality, such action will be entertained.' See, also, Pangborn v. Westlake, 36 Iowa, 546, 549, and authorities there cited. [Emphasis ours.]

"The statute of New Mexico does not declare a contract providing for usurious interest to be absolutely void in respect to the amount loaned and legal interest thereon, but only imposes a fine upon any person or corporation charging, collecting, *or* receiving a higher rate of interest than 12 per cent per annum, and forfeits to the person from whom such interest is collected or received, or to his executors, administrators, or assigns, double the amount so collected or received; the action to recover such penalty to be brought within three years after the cause of action accrues. Construing sections 1736, 1737, and 1738 together, the statute does not prohibit the recovery of the amount loaned, with legal interest. No such consequence as the forfeiture of the principal and legal interest is visited upon the lender. And that seems to be the view expressed by the Supreme Court of the territory of New Mexico when, construing the local statute, in Milligan v. Cromwell, 3 Johns. N.M. 327, 330, 9 P. 359, it said: 'If it should not be legal to recover more than 12 per cent interest per annum upon written contracts, the converse of that proposition would seem to follow as a necessary consequence that it shall be lawful to recover on such contract 12 per cent. interest per annum.' It is true that, by necessary implication, the contract is void as to any interest stipulated to be paid, in excess of the highest rate allowed by the statute. But as the statute only imposes a fine for charging, collecting, or receiving usurious interest, and gives to the borrower a right to recover double the amount of such interest collected or received from him, the courts ought not to declare the contract void as to principal and legal interest. That would add a penalty not prescribed by the statute."

This decision was cited by the Territorial Supreme Court in Esquibel v. Chavez, 12 N.M. 482, 78 P. 505, to the declaration (page 510): "The general rule, of course, is that provisions prescribing the penalty in a statute are exclusive, and that the courts have no right to impose any penalty, save as provided by the Legislature."

The Supreme Court in the McBroom Case, supra, in support of its decision, referred to the case of Fritts v. Palmer, 132 U.S. 282, 289, 10 S.Ct. 93, 33 L.Ed. 317, where the question was whether a deed for real estate in Colorado, made to a Missouri corporation organized to do business in Colorado, but which had not filed in the office of the Secretary of State of the latter state a copy of its charter of incorporation, etc., was absolutely void, passing no title to the grantee. After referring to the Colorado statutes, which provided that no foreign or domestic corporation established or maintained in any way for pecuniary profit of its stockholders or members should purchase or hold any real estate in that state, except as provided for in the act, and that every company incorporated under the laws of any foreign state or kingdom or any state or territory of the United States beyond the limits of Colorado, and then or thereafter doing business

within that state, should file in the office of the secretary of state a copy of its charter of incorporation; and that failure to comply with these provisions should render each and every officer, agent or stockholder so failing therein, jointly and severally liable on any and all contracts of such company made within that state during the time that such corporation is so in default. The Supreme Court said (page 95) : "The constitution and laws of Colorado, it should be observed, do not prohibit foreign corporations altogether from purchasing or holding real estate within its limits. They do not declare absolutely or wholly void, as to all persons, and for every purpose, a conveyance of real estate to a foreign corporation which has not previously done what is required before it can rightfully carry on business in the state. Nor do they declare that the title to such property shall remain in the grantor, despite his conveyance. So far as we are aware, the only penalty imposed by the statutes of Colorado upon a foreign corporation carrying on business in the state, before acquiring the right to do so, is found in section 262 of the same chapter. * * * The fair implication is that, in the judgment of the legislature of Colorado, this penalty was ample to effect the object of the statutes prescribing the terms upon which foreign corporations might do business in that state. It is not for the judiciary, at the instance or for the benefit of private parties, claiming under deeds executed by the person who had previously conveyed to the corporation, according to the forms

prescribed for passing title to real estate, to inflict the additional and harsh penalty of forfeiting, for the benefit of such parties, the estate thus conveyed to the corporation and by it conveyed to others."

Under the statute (Sec. 141-1408), the legislature is not interested in proceedings having for their object the taking of the property conveyed away from one of the guilty parties and giving it to another. It says: "And any or all property conveyed with intent to violate any of the provisions of this act shall escheat to the state upon proper proceedings therefor." Appellees have cited no decision, and we have found none, where a statute so specifically provides for action by the state itself in the public interest where a court has indulged the fiction heretofore alluded to in order to avoid the general rule that where the parties are in equal wrong the position of the defendant is the better and that the courts will not allow their machinery to be used for the relief of one who has voluntarily parted with his property in furtherance of a wrong against the public. It is to be noted that the statute is penal in character and must therefore be strictly construed, and also that the statute contains no provisions that the forbidden conveyance shall be void between the parties. We see no reason why the title may not repose in one of the parties as well as the other until the state shall successfully prosecute proper proceedings to escheat the property to the state. In other words, adverting to the 13 C.J. text,

"Contracts", § 441, quoted supra, if the transaction was as the trial court found it to be, no "greater public good can be subserved by action than by inaction" in the case at bar.

For the purposes of our consideration and decision, we assume, though we do not decide, that the sole object of the transfer of the property was to defraud the state of its revenues. If wrong it was, the parties were equal in it, and the plaintiffs as heirs of the grantor have no rights superior to those the grantor had at the time of her death.

Other questions are presented, but as plaintiffs were not entitled to a decision in their favor under their pleadings or the findings of the court, they need not be reviewed.

The judgment and decree is reversed and the cause remanded, with directions that it be dismissed, and it is so ordered.

HUDSPETH, C. J., and SADLER and ZINN, JJ., concur.

BRICE, Justice (dissenting).

The object of the transfer of this property was to defraud the state of its revenues. The parties to the transaction were in pari delicto, and the heirs of Mrs. Delgado have no rights superior to those she had at the time of her death.

The State of New Mexico in an appreciation of its soldiers, enacted, "real and personal property of every soldier shall be exempt from taxation in the sum of two thousand dollars."

While the state is generous with its soldiers, it does not propose that its generosity shall be abused by such fraud as the court found to exist in this case, and to protect it therefrom enacted further: "Any person claiming or knowingly receiving said exemption with respect to property of which he is not the real owner, or any person claiming or knowingly receiving said exemption when not entitled thereto by any trick, fraud, evasion or subterfuge, or any person who is not entitled to the said exemption and who shall secure or attempt to secure the benefits of same by conveying his property to a person entitled to exemption under this act with intent to secure said exemption to such person not entitled thereto, and any person violating any provision of this act, shall be punished by a fine of not less than $500.00 nor more than $3,000.00 or imprisonment in the penitentiary not less than one year nor more than three years or by both such fine and imprisonment at the discretion of the court, and any or all property conveyed with intent to violate any of the provisions of this act shall escheat to the state upon proper proceedings therefor." Sec. 141-1408, N.M.Sts.1929.

That such contracts *are void* is settled by innumerable decisions. In Third National Exchange Bank, etc., v. Smith, 17 N.M. 166, 125 P. 632, regarding the validity of a deed of trust and notes securing it, given in violation of a federal penal statute, this court stated (page 635):

" * * * The defense interposed here is that the consideration of the contract out of which the notes and trust deed originated, and which they were given to secure, was based upon the violation of a penal statute of the United States. We think the authorities uniformly hold that an act done in violation of a statutory prohibition is void, and confers no right upon the wrongdoer. Reinhart had no right, under the law, to assert the right to the exclusive use and possession of government land, to which he had no claim or color of title, made or acquired in good faith, or asserted right thereto by or under claim made in good faith, with a view to entry thereof at the proper land office, etc., and in asserting such right he was acting in violation of law, and any conveyance or contract which he might make to any portion of the land to which he asserted such right to the exclusive use and possession, and into which his assertion of such right to the exclusive use and possession entered, and by which he attempted to confer such right upon another party, was utterly void. * * *

"We are aware that the rule above stated is subject to the qualification that when upon a survey of the statute and from its subject-matter, and the mischief sought to be prevented, it appears that the Legislature intended that the violation of the statutory prohibition should not render a contract void, effect must be given to that intention; but a survey of the statute in question fails to disclose any such intention."

Also, see, Waskey v. Hammer et al., 223 U.S. 85, 32 S.Ct. 187, 56 L.Ed. 359; Niblack et al. v. Seaberg Hotel Co. et al., 42 N.M. 281, 76 P.2d 1156; Miller v. Ammon, 145 U.S. 421, 12 S.Ct. 884, 36 L.Ed. 759.

The majority seem to hold that because the statute prescribes certain penalties, that, these exclude all others; in other words that such penalty is exclusive. I quote from the majority: "It is to be noted that the statute is penal in character and must therefore be strictly construed, and also that the statute contains no provisions that the forbidden conveyance shall be void between the parties."

The opposite is true. That is, *unless* it affirmatively appears from a survey of the statute, taking into consideration its terms, subject matter and the mischief sought to be prevented, the legislature intended that *such* contracts should *not* be void, they are absolutely void. Miller v. Ammon, supra; Third National Exchange Bank v. Smith, supra; Niblack v. Seaberg Hotel Co., supra.

I conclude that the deed in question was void, as I find nothing in the statute to indicate that the legislature intends that contracts made in its violation should be valid.

It is true as the majority opinion holds, that ordinarily where parties to illegal contract are in pari delicto, the court will leave them where it finds them, whether the contract is executory or executed, refusing relief to both; and that this action of the court gives no validity to the trans-

action, but deprives the parties of all right to either enforce the contract or be relieved from it. There is a well recognized exception to this rule; and that is, where such contracts are against the public policy of the state, or against public interests.

"Although the parties are in pari delicto, yet the court may interfere and grant relief at the suit of one of them where public policy requires its intervention, even though the result may be that a benefit will be derived by a plaintiff who is in equal guilt with the defendant. But here the guilt of the parties is not considered as equal to the higher right of the public, and the guilty party to whom the relief is granted is simply the instrument by which the public is served. But courts are and should be cautious in affording relief to a fraudulent debtor, or other violator of the law under this exception, and should not only where it is evident that some greater public good can be subserved by action than by inaction.'" 13 C.J. title "Contracts", Sec. 441.

Also, see, Gilchrist et al. v. Hatch, 183 Ind. 371, 106 N.E. 694, Ann.Cas.1917E, 1030, and note to Rideout v. Mars, Ann. Cas.1913D, 770; Buck v. Walker, 115 Minn. 239, 132 N.W. 205; 12 Am.Jur., title "Contracts", secs. 214 and 215.

The rights of the State are grossly violated by such unconscionable acts on the part of ex-soldiers and their relatives. To leave the parties where the court finds them would deprive the State of taxes due it for several past years, as well as future revenue. Consideration for the public welfare should be paramount; and in my opinion requires relief, notwithstanding, it may benefit the heirs of Mrs. Delgado, who otherwise would be entitled to no relief.

It is the public policy of this state, expressed in its constitution and statutes, that property subject to taxation shall bear its proportion of the burden of taxes which must be collected for the expense of government. As between the parties to this suit, the court is neutral. It is not interested in the transaction except to prevent a fraud against the state; otherwise it would leave the parties where they have placed themselves.

The opinion of the majority is an invitation to those who, in like situations, are willing to abuse a privilege granted to them by a generous state government, to defraud it of its revenue.

For years, the owners of this property have not been paying their just taxes on it, and cannot be compelled to do so while the legal title is in the defendant. This court should not say in such case that because the parties entered into a contract in violation of law and are in pari delicto, that the contract must stand. This is an invitation to others to go and do likewise. The mutual guilt of the parties to the deed should not be a bar to the granting of relief to the plaintiffs, the effect of which is to restore to the state its revenues (past and future), even though one of the par-

ties to the fraud (or her heirs) benefits thereby.

It is immaterial that the state may sue to escheat the property. This drastic remedy of forfeiture, with its attendant presumptions in favor of the holder of the title, may fail; or the law officers of the state may not institute proceedings. Notwithstanding public rumors have persisted for years that such practices are common, I have never heard of any suit being filed to escheat property under this statute.

The contract was void, and the parties were in pari delicto; but the interests of the state are involved and they are paramount. The very object of the contract was to rob the state. The defendant should not be rewarded for his perfidy by the court, and at the same time, reassure others guilty of the same conduct, or who may be inclined to follow this example, that the courts are helpless to prevent it.

The judgment of the district should be affirmed.