464 P.2d 891

**FORREST CURRELL LUMBER COMPANY, Inc., Plaintiff-Appellee,**

v.

**Sam THOMAS and Beatrice B. Thomas, Defendants-Appellants,**

**Standard Life and Accident Insurance Company, Intervenor-Appellee.**

**No. 8716.**

Supreme Court of New Mexico.

Feb. 9, 1970.

Emmett C. Hart, Tucumcari, for defendants-appellants.

Rowley, Breen & Bowen, Tucumcari, for plaintiff-appellee.

Eugene E. Brockman, Tucumcari, for intervenor-appellee.

## OPINION

JAMES W. MUSGROVE, District Judge.

Plaintiff-appellee Forrest Currell Lumber Company, Inc. brought suit against defendants-appellants Sam Thomas and Beatrice B. Thomas for a judgment on a note and foreclosure of a mortgage on appellants' motel. Appellants admitted the note and mortgage but claimed a breach of the motel construction contract from which the note and mortgage arose and filed a counterclaim for damages. Intervenor-appellee Standard Life and Accident Insurance Company filed a suit for judgment on their note and foreclosure of the second mortgage given by appellants on the motel. In answer to the intervenor, appellants filed affirmative defenses of failure of consideration, failure to give credit for payments, and illegality and invalidity of the note and mortgage. In addition, a counterclaim was filed against the intervenor for usury and for illegal and excessive brokerage fees. The usury claim has been considered and found to be without merit. The cause was tried to the court, and judgment was entered against appellants in favor of both appellees.

First we will decide appellants' appeal from the judgment for appellee Lumber Company.

Appellants attack finding number three of the trial court. The essential part of the finding which concerns us here was:

"* * * [T]he plaintiff has substantially complied in all respects with the agreement concerning the construction of said motel."

Appellants base their attack on two issues: (1) The failure of appellee Lumber

Company to complete the construction of the motel by June 1, 1964 (it was completed in September, 1964); and (2) material latent defects in the construction of the motel.

Was there substantial evidence from which the trial court could make the finding in question? We hold that there was. This court has stated many times that in determining the sufficiency of evidence to sustain the lower court's findings the reviewing court considers only such evidence and inferences to be drawn therefrom as will support such findings. It does not weigh conflicting evidence or credibility of witnesses. Findings supported by substantial evidence will not be disturbed. Houston v. Lovington Storage Co., 75 N.M. 60, 400 P.2d 476 (1965); Sterling v. B & E Constructors, Inc., 74 N.M. 708, 397 P.2d 729 (1964).

The written contract between the parties is silent as to a completion date of the construction. The parol evidence offered at the trial was conflicting on this point. Within the finding that plaintiff had substantially complied with the construction contract was an implied finding that it had been completed within a reasonable time. The evidence viewed in the light most favorable to plaintiff supports that finding. Since appellants had the burden of proving the allegation that a completion date of June 1, 1964 had been agreed upon and had submitted requested findings to this effect which the trial court refused without specifically finding to the contrary, in legal effect this amounted to a finding against the defendant on the issue. Herrera v. C & R Paving Co., 73 N.M. 237, 387 P.2d 339 (1963).

The evidence concerning the claimed latent defects in the construction was also in sharp conflict. The argument primarily centered on certain cracks that developed in the block walls. The trial judge made a personal inspection of the premises. His role as the fact finder was to weigh the evidence, to reconcile the contradictions in the testimony, and to say where the truth lay. This he did, and the evidence will sustain his findings in that regard. Hughes v. Walker, 78 N.M. 63, 428 P.2d 37 (1967); Dotson v. Farmer's, Inc., 74 N.M. 725, 398 P.2d 54 (1965). Therefore, we find that there was substantial evidence to support the court's finding number three.

We now come to appellants' appeal from the judgment for appellee Standard Insurance Company.

■ Appellants argue that the intervenor did not have standing to maintain its action because of §§ 51-10-4 and 51-10-5, N.M.S.A., 1953 Comp., relating to admission of a foreign corporation to do business in New Mexico, in effect at the time the suit was filed. With this we cannot agree. Section 51-10-4, supra, now repealed (Ch. 81, § 135, N.M.S.L.1967), reads in part:

"(a) Every foreign corporation, except banking, *insurance* and railroad corporations, before transacting any business in this state, shall file in the office of the state corporation commission a copy of its charter * * *." (Emphasis added.)

Appellants do not question that intervenor is an insurance company. As such, the section relied upon clearly has no application to it.

■ Appellants next raise the issues of the legality of the intervenor's note and mortgage and of the illegal brokerage fees charged by intervenor's agent. The original loan agreement contained the following provisions:

"Borrowers further covenant and agree that during the entire time the indebtedness, secured by said First Mortgage, or any part of said indebtedness remains unpaid, they will keep and maintain in full force and effect with STANDARD LIFE AND ACCIDENT INSURANCE COMPANY of Oklahoma City, Oklahoma, life insurance on the lives of Mr. and/or Mrs. Sam Thomas and/or members of their family in the sum of not less than _____. Said

insurance shall be additional security for the debt evidenced by the aforesaid Promissory Note and First Mortgage. Borrowers and Lender both stipulate that the insurance policies referred to in this Agreement and accepted by Lender as additional security call for an aggregate annual premium totaling $8,000.00."

This agreement also provided that the full annual premium was to be paid in advance. The mortgage contained essentially the same language as the loan agreement.

Mr. Joe Savage, Assistant Secretary of the Standard Life and Accident Insurance Company, who was in charge of investment accounting, including real estate loans, testified as follows:

"Q. Okay. And this insurance that you mentioned of $8,000.00, say on a hundred thousand dollar loan, this was, this was a requirement or a condition precedent to the handling of this package loan thing that you have described?

"A. I think in this case it was. It's probably mentioned in the agreement."

The evidence clearly demonstrates that the purchase of insurance from appellee was a condition precedent to lending the money. Here the evidence on this issue was substantially all documentary, corroborated by the oral testimony. The reviewing court is in as good a position to determine the facts therefrom as was the trial court. Baker v. Shufflebarger & Associates, Inc., 78 N.M. 642, 436 P.2d 502 (1968); Price v. Johnson, 78 N.M. 123, 428 P.2d 978 (1967); and Crutcher v. Joyce, C.A.N.M., 146 F.2d 518 (1945).

Having determined that appellee Insurance Company required appellants to purchase life insurance from appellee as a condition precedent to lending the money, the following question is presented: What effect did this requirement have on the note and mortgage?

We hold that although the insurance requirement was illegal it did not make the note and mortgage unenforceable. The requirement by appellee Insurance Company was in direct contravention to § 40A–16–15, N.M.S.A., 1953 Comp., of our criminal statutes, which reads as follows:

"Coercing the purchase of insurance from particular broker consists of any person engaged in selling real or personal property, or the lending of money, requiring as a condition precedent to the sale, financing the purchase of such property or the lending of money, or the renewal of extension of any loan or mortgage, that the purchaser of such property, or recipient of the financial assistance negotiate any policy of insurance or renewal thereof through a particular insurance company, agent, solicitor or broker.

"Nothing in this section shall be construed to prevent the exercise by any person the right to designate minimum standards as to the company, the terms and provisions of the policy and the adequacy of the coverage with respect to insurance on property pledged or mortgaged to such person.

"Whoever commits coercing the purchase of insurance from particular broker is guilty of a petty misdemeanor."

The general rule is that a contract founded on an illegal consideration is void. Third National Exchange Bank of Sandusky, Ohio v. Smith, 17 N.M. 166, 125 P. 632 (1912). This rule is subject to the qualification that the statute violated must be examined as to its subject matter, its object and purpose, the wrong or evil which it intends to remedy or prevent, and the class of persons sought to be controlled. Even though the statute has been violated, if from such examination it appears that the manifest intention was not to make a contract void, that effect must be given. Third National Exchange Bank of Sandusky, Ohio v. Smith, supra; Niblack v. Seaberg Hotel Co., 42 N.M. 281, 76 P.2d 1156 (1938); Farrar v. Hood, 56 N.M. 724, 249 P.2d 759 (1952); Douglass v. Mutual Ben. Health & Accident Ass'n., 42 N.M. 190, 76 P.2d 453 (1937).

■■ Where a contract is made up of several agreements, one of which is illegal, if the illegal part can be eliminated without destroying the symmetry of the contract as a whole, such will be done, and the remainder will be enforced. Ritchey v. Gerard, 48 N.M. 452, 152 P.2d 394 (1944). In the present case, that part of the contract requiring the mandatory insurance provision is separable without materially affecting the remainder of the contract dealing with the note, mortgage and loan. Once the illegal portion has been separated, it must then be examined to see what, if any, effect it will have on the parties. Appellants paid appellee Insurance Company $8,000.00 for the insurance premiums. There was evidence that appellants had been given credit for the sum of $2,600.00 when the insurance was cancelled, representing the cash value of the policies. That made a net amount of $5,400.00 obtained by appellee Insurance Company by the illegal agreement. This $5,400.00 should be returned to appellants. This is true even though the Insurance Company could not have avoided liability on its policies because of the illegality. Foundation Reserve Insurance Co. v. Kennedy, 79 N. M. 382, 444 P.2d 293 (1968). Here the parties to the illegal agreement were not pari delicto. The statute prohibiting the coercing of the purchase of insurance from a particular broker placed a penalty on the party coercing but not the other. To permit appellee Insurance Company to retain the $5,400.00 would allow it to gain an advantage by its illegal act. This we cannot do. Delgado v. Delgado, 42 N.M. 582, 82 P.2d 909, 118 A.L.R. 1175 (1938); Buck v. Mountain States Investment Corporation, 76 N.M. 261, 414 P.2d 491 (1966).

■ In addition, as shown by evidence not in conflict, appellants paid to appellee Insurance Company or its agent, Leo Baldwin, $3,800.00 as fees for negotiating and securing the loan. There were additional payments made to Baldwin, but the evidence was inconclusive as to their nature. The loan agreement between appellants and appellee Insurance Company called for a discount of three per cent of the entire loan of $100,000.00 to be paid appellee by appellants. That would amount to $3,000.-00. Section 50-6-13, N.M.S.A. 1953 Comp., places a maximum limit on the rate of commission for negotiating or securing a loan of this size at four per cent on the first $1,000.00, two per cent on the remainder, so that in this case the maximum permissible commission would have been $2,-020.00. Section 50-6-14, N.M.S.A., 1953 Comp., makes a violation of the last mentioned section a misdemeanor and, in addition to a fine and imprisonment, makes the person or corporation liable in damages in double the whole amount charged for negotiating or securing the loan. Appellee Insurance Company or its agent, having charged a commission in violation of the statute, became liable to appellants in the sum of $7,600.00.

■ The only finding made by the trial court concerning appellants' affirmative defenses and counterclaim against appellee Insurance Company was a general one that appellants "failed to establish the allegations contained in their affirmative defense and counterclaim and claims for relief." Based on that finding the court concluded the affirmative defense and counterclaim should be dismissed. There was no substantial evidence to support such a finding. A finding of fact, not supported by substantial evidence, will not be sustained on an appeal, and a judgment based on such finding is itself without support. DeBaca v. Kahn, 49 N.M. 225, 161 P.2d 630 (1945).

The judgment will be affirmed as to appellee Forrest Currell Lumber Company, Inc. and as to appellee Standard Life and Accident Insurance Company, and the cause remanded to the district court to enter judgment for appellants on their counterclaim against appellee Standard Life and Accident Insurance Company in the amount of $13,000.00.

MOISE, C. J. and WATSON, J., concur.